UNITED STATES of America, Plaintiff-Appellee,

v.

Wardell L. SMITH, Jr., Defendant-Appellant.

No. 74–1866.

United States Court of Appeals, Ninth Circuit.

Sept. 26, 1974.

Certiorari Denied Jan. 20, 1975. See 95 S.Ct. 810.

Samuel F. Adam (argued), Chicago, Ill., for defendant-appellant.

Christopher Pickrell, Asst. U. S. Atty. (argued), Tucson, Ariz., for plaintiff-appellee.

OPINION

Before BARNES and CARTER, Circuit Judges, and LINDBERG,[*] District Judge.

JAMES M. CARTER, Circuit Judge.

This is an appeal from the judgment of conviction for knowingly and intentionally possessing with intent to distribute 341 grams of cocaine and 112 grams of heroin, in violation of 21 U.S. C. § 841(a)(1). The defendant, Wardell L. Smith, Jr.'s primary contention on appeal is that the trial court erred in denying his motion to suppress evidence obtained pursuant to a strip search. We conclude that the reliability of information supplied to special agents by an informer was confirmed prior to the search and that the motion to suppress was therefore properly denied. We affirm.

At approximately 4:00 p. m. on August 30, 1973, Customs Inspector John Jackson observed a tall Negro male in his early twenties, wearing a large, floppy-brimmed hat and see-through fishnet shirt, enter Mexico at the Nogales, Arizona port of entry. He was accompanied by a light-skinned Negro female, wearing a light-colored jacket. Inspector Jackson later identified the light-skinned female as Caroline Brown.

At approximately 8:00 p. m. that evening, Inspector Jackson observed the same tall Negro male re-enter the United States. This time he was alone. Inspector Jackson questioned him, and the man identified himself as Wardell Smith from Tucson and stated that he was then living with his aunt in Tucson. In the defendant's pocket Inspector Jackson found a piece of paper with the name "Johnny" and a Mexican Nogales phone number on it. Suspecting that "Johnny" might be Johnny Grant, a

---

[*] Honorable William J. Lindberg, Senior United States District Judge, Western District of Washington, sitting by designation.

big-time narcotics dealer in Mexico, Jackson memorized the number and released the defendant. When he later called the number, the person answering the call identified himself as "Johnny" and told Jackson that he could make a big narcotics deal with him the following day.

Later that same evening at about 10:00 p. m., Zachary Brown and Caroline Brown were arrested with heroin at the Nogales border. Zachary was questioned by Agent Wayne Brown. He told agent Brown that he

> "was nothing but a poor sick Junkey, that if I was seriously interested in catching someone who did have a quantity of cocaine on them at that time, that he could help me . . . [A]t that very moment there were two individuals in Tucson at the International Airport waiting to board a flight to Chicago, he thought the departure of that flight would be 11:15 p. m. . . . . [O]ne of the individuals was a tall, thin Negro male in his 20's, that he was wearing a large floppy-brim hat, and a fishnet shirt, black on [sic] color. . . . [A]long with that person would be a very, very light-skinned, what he thought was a Negro female, she would be wearing a red pants suit, the two of them were traveling together, he said he had traveled to Nogales, Sonora with the two of them that day, that when the female returned from the Republic of Mexico to the United States she was carrying thirteen ounces of cocaine. He said that the two of them would board the flight to Chicago and leave that evening."

The information from Agent Brown and Inspector Jackson was relayed to Tucson by radio and received there at 10:30 p. m. by Agents McBride and Bock. They went to the Tucson airport and observed a man fitting the descriptions given by Jackson and Zachary Brown and a woman fitting the description given by Zachary Brown. They were standing at the ticket desk and had purchased two plane tickets to Chicago

for the 11:00 p. m. flight in the name of Mr. and Mrs. Smith. A search of the defendant revealed a piece of paper hidden in his underwear, with a date of August 30, 1973, in one corner and six columns totalling about $10,800. A search of his companion revealed cocaine and heroin in her girdle. Smith later told agents that the narcotics had been purchased from Johnny Grant in Nogales, Mexico.

■ Since this was not a border search, the denial of the motion to suppress can be upheld only if there was probable cause. The Supreme Court in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), recognized that probable cause may be established based upon an informant's tip if there is subsequent corroboration of the details of the tip to insure reliability.

Although in *Draper, supra*, the informer had provided accurate and reliable information in the past, he had not indicated the source of his present information, nor why it was reliable. The Court did not establish past reliability of the informer as essential to a finding of probable cause, however. Rather, the Court cited Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925) for the proposition that probable cause exists where " 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Draper v. United States, *supra*, 358 U.S. at 313, 79 S.Ct. at 333.

In Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Court made it clear that an informer's reliability can be verified on grounds other than past reliability: the reasonableness of his access to accurate knowledge concerning the suspect, independent corroboration of the informer's information, and independent investigation indicating the likelihood, apart

from the informer's information, that the suspect was in possession of contraband. *Id.* at 417, 89 S.Ct. 584.[1] In *Draper, supra,* appearance of a man at the time specified by the informer, and whose dress corresponded precisely to the informer's detailed description indicated that "the report was of the sort which in common experience may be recognized as having been obtained in a reliable way" and it was therefore "perfectly clear that probable cause had been established." *Id.* at 417–418, 89 S.Ct. at 590.

■■ Here, as in *Draper, supra,* the arresting officers, Bock and McBride, were acting upon information furnished by an informant. That information was a tall Negro male, wearing a floppy-brimmed hat and black-see-through fishnet shirt, had purchased cocaine in Nogales and was planning to return to Chicago at approximately 11:15 p. m. that evening. The informer also stated that the suspect would be accompanied by a light-skinned Negro female.

This information was corroborated in its entirety by Agents Bock and McBride at the Tucson Airport. Further, independent investigation indicated that the suspect had been observed earlier that day in Nogales, Mexico, and was in possession of a telephone number belonging to a man named Johnny, who the agents believed to be Johnny Grant, a well-known narcotics dealer, and who in any event offered to sell the agents narcotics the next day. The suspect had traveled to Mexico with a Caroline Brown who, with her husband, Zachary Brown, was later arrested in possession of narcotics at the border. It was Zachary Brown who informed the agents that the suspect would be returning to the United States with thirteen ounces of heroin. Since the suspect had arrived

in Mexico with the informer's wife, returned with a woman known to and described by the informer, and was in possession of the phone number of a known narcotics dealer, the informer's information was clearly "of the sort which in common experience may be recognized as having been obtained in a reliable way." *Spinelli, supra,* at 417–418, 89 S.Ct. at 590.

We hold, therefore, that probable cause for the strip search did in fact exist. The defendant's contention that the search was invalid because the agents were acting on information received by radio bulletin is without merit. *See* Whitely v. Warden, 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971) (Unless the facts known to the broadcasting officer were incorrect or insufficient, the "police were entitled to act on the strength of the radio bulletin").

■ The defendant's contention that even if there was probable cause for the search, the strip search conducted was invalid without first obtaining a warrant, is equally unavailing. Although law enforcement officers must obtain a warrant whenever possible, they are permitted to make warrantless searches when probable cause exists and contraband is "threatened with imminent removal or destruction." Hernandez v. United States, 353 F.2d 624, 627 (9 Cir. 1965). *See* United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). "Where the exigencies of time and the possible removal of the contraband to another state create an emergency, no warrant is required." United States v. Ogden, 485 F.2d 536, 540 (9 Cir. 1973).

■ In the present case, Agents Bock and McBride received the radio message concerning the defendant at 10:30 p. m. They then went to the Tucson airport

1. Other circuits have likewise found reliability on the basis of likelihood of access to accurate knowledge and detailed corroboration. *See, e. g.,* United States v. Horton, 488 F.2d 374, 379 (5 Cir. 1973) ("Although the informant under these facts was anonymous, there was sufficient cor-

roboration of the details of the report to establish both the reliability of the informant and that the informant had obtained his information in a reliable way"); United States v. Dzialak, 441 F.2d 212, 216 (2d Cir. 1971).

where their information was confirmed. They found the defendant and his companion at the ticket counter, preparing to board an 11:00 p. m. flight to Chicago. The defendant had to be either held or permitted to board the plane and depart the jurisdiction. To hold him while a warrant was being procured would have been the equivalent of an arrest or seizure. *See* Chambers v. Maroney, 399 U.S. 42, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). "Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation." Roaden v. Kentucky, 413 U.S. 496, 505, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757 (1973). The motion to suppress was properly denied.

We have reviewed the defendant's other allegations of error and find them to be without merit.

The judgment of conviction is affirmed.