Amended Feb. 23, 1978.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Jody MORENO, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Raymond MORENO,
Defendant-Appellant.

Nos. 77–1406, 77–1427.

United States Court of Appeals,
Ninth Circuit.

Jan. 5, 1978.

As Amended On Denial of Rehearing
Feb. 23, 1978.

Certiorari Denied April 17, 1978.
See 98 S.Ct. 1615.

John McCabe, San Diego, Cal., for defendant-appellant in No. 77–1406.

Charles L. Goldberg of Goldberg & Link, San Diego, Cal., for defendant-appellant in No. 77–1427.

John J. Robinson, Asst. U. S. Atty., on the brief, Terry J. Knoepp, U. S. Atty., John J. Robinson, Asst. U. S. Atty., argued, San Diego, Cal., for plaintiff-appellee.

Before CHAMBERS and CHOY, Circuit Judges, and FERGUSON,* District Judge.

PER CURIAM:

Appellants appeal from judgments of conviction of the offenses of distributing and dispensing heroin and conspiracy to commit that offense, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and unlawfully carrying a firearm during the commission of those felonies in violation of 18 U.S.C. § 924(c).

Jurisdiction of this court is established by 28 U.S.C. §§ 1291 and 1294.

After being convicted in separate jury trials Mr. Moreno was sentenced to a total of 70 years in prison with a special lifetime parole term. Mrs. Moreno was sentenced to a total of 12 years with a 15 year special parole term. Parole on each sentence was committed to the discretion of the Parole Board.

The appellants contend:

(1) A motion to suppress should have been granted because there was no probable cause to arrest the Morenos and the search warrant for their home was invalid.

(2) The sentences are cruel and unusual.

(3) Due process was violated by the district court's impliedly increased punishment because the defendants exercised their right to a jury trial and failed to confess guilt prior to sentencing.

I

*Motion to Suppress*

A. *Facts.*

Undercover agents had conducted many meetings in San Diego with several persons concerning the purchase of heroin. Finally a man by the name of Van Deventer con-

---

* Honorable Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation.

tacted the agents. In the course of their discussions, Van Deventer provided the agents with the phone number of his connection "Ray." Surveillance agents who were monitoring the negotiations traced the number to the Moreno residence.

Further meetings and telephone conversations concerning the proposed sale took place the next morning. Eventually Van Deventer arrived at the hotel room where the agents were staying, bringing with him 1½ lbs. of heroin which he stated he had obtained from Mr. Moreno earlier that day. At that point, Van Deventer was arrested and agreed to cooperate.

He told the agents that his source for heroin was Raymond Moreno, and he gave a description of where Moreno lived and the kind of car he drove. Van Deventer also stated that Moreno was always armed and dangerous and that he had sold at least a million and a half dollars worth of heroin in the last year. The name of Raymond Moreno was familiar to the agents as a suspected narcotics dealer.

With Van Deventer's consent the agents monitored a phone call to Mr. Moreno in which Van Deventer ordered ten more ounces of heroin and Moreno agreed to meet him at "the spot" in half an hour. Van Deventer told the agents where "the spot" was and described the manner in which Moreno would approach him there.

Surveillance units, including a helicopter, were then dispatched to the Moreno residence. Approximately an hour later the car Van Deventer had described as Moreno's left the residence and was followed as it proceeded directly from the residence to the meeting place. A woman was driving, and a man was sitting in the front passenger seat.

Meanwhile, Van Deventer had been taken to the meeting place and agents had established surveillance. At one point Van Deventer attempted to flee but he was stopped. He stated that he had tried to escape because he was afraid Moreno would kill him. An agent then took Van Deventer's place in his car.

The Morenos' vehicle arrived at the pre-arranged location, approached Van Deventer's car, and then drove past it very slowly, while both passengers looked at it. This action conformed with the procedure Van Deventer had previously described to the agents.

At that point, the agents stopped the Morenos' car. The driver, Mrs. Moreno, was ordered out of the car first. She told the officers that her husband had a gun. Mr. Moreno was then removed from the car and was placed under arrest.

A search of the vehicle produced the ten ounces of heroin, which was found in plain sight on the rear seat, and a loaded revolver, which was discovered under the passenger seat where Mr. Moreno had been sitting. Another revolver and some marked money from an earlier drug transaction were found in Mrs. Moreno's purse.

A search warrant was obtained, and the Moreno residence was searched. Additional guns, large amounts of cash and approximately 13 lbs. of heroin were discovered there.

### B. *Probable Cause to Arrest and Search.*

■ The district court was correct when it found probable cause for the arrest and search of the Morenos. This court has held that information provided by an arrested co-conspirator of no proven reliability may, when detailed and corroborated by observation, constitute probable cause. *United States v. Smith*, 503 F.2d 1037 (1974), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 825 (1975).

In this case the statements made by Van Deventer were amply corroborated before the Morenos were arrested. The agents had monitored a call in which Moreno had agreed to meet Van Deventer to deliver heroin. The Morenos were observed to leave their residence, the location of which Van Deventer had described, and drive directly to a meeting place which Van Deventer had pinpointed for the agents. The car they drove matched the description Van Deventer had given, and their behavior upon arriving was consistent with the information which he had provided.

Furthermore, the agents had additional, independent bases for believing Van Deventer's post-arrest statements regarding Moreno. Even before his arrest, Van Deventer had referred to his source as "Ray" and had provided the phone number which was traced to the Moreno residence. The agents also knew of Raymond Moreno as a major narcotics dealer in the San Diego area. Although such general information as to reputation is insufficient in itself to establish probable cause, it is a factor which may be considered. *United States v. Harris,* 403 U.S. 573, 582–3, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *United States v. Fluker,* 543 F.2d 709, 714 (9th Cir. 1976). *Cf. United States v. Larkin,* 510 F.2d 13 (9th Cir. 1974) (no probable cause where unreliable informant's tip was corroborated only by completely innocuous conduct unrelated to any alleged criminal activity).

■ The warrantless search of the vehicle following the arrests was justified under the "moving vehicle exception."

"Under this exception all that is required to stop and search an automobile on the highway is probable cause to believe that it contains any kind of contraband. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, . . . (1971). The search is justified by exigent circumstances because 'the car is movable, the occupants are alerted and the car's content may not be found again if a warrant must be obtained . . . .' " *United States v. Abascal,* 564 F.2d 821, 828 (9th Cir. 1977); *United States v. Garcia-Rodriguez,* 558 F.2d 956 (9th Cir. 1977).

The agents had probable cause to believe that the ten ounces of heroin which Van Deventer had ordered would be found in the vehicle. Additionally, based on the statements of Van Deventer and Mrs. Moreno, they had probable cause to believe that Mr. Moreno had carried a weapon in the car. This information created a particularly compelling exigent circumstance justifying an immediate search. *See Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

■ The search of Mrs. Moreno's purse was a valid search incident to her arrest, and a warrant was therefore unnecessary. *Chimel v. California,* 395 U.S. 752 (1969); *United States v. Basurto,* 497 F.2d 781 (9th Cir. 1974); *United States v. Mehciz,* 437 F.2d 145 (9th Cir.), *cert. denied,* 402 U.S. 974, 91 S.Ct. 1663, 29 L.Ed.2d 139 (1971).

C. *Search Warrant for the Residence.*

■ The affidavit in support of the search warrant for the Moreno residence set out in detail the events which had transpired up to that point, including a description of the items seized at the time of the arrest of the Morenos, and recited the information which had been provided by Van Deventer. The facts contained in the affidavit supported the magistrate's finding of probable cause to believe that additional contraband and relevant evidence would be found at the Morenos' home.

Van Deventer's statements were reliable because they had been corroborated by the agents' own observations before the arrest of the Morenos and by the discovery of the heroin and the guns at the time of the arrest. *See Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *United States v. Banks,* 539 F.2d 14 (9th Cir.), *cert. denied,* 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed. 2d 626 (1976); *Quigg v. Estelle,* 492 F.2d 343 (9th Cir.), *cert. denied,* 419 U.S. 848, 95 S.Ct. 86, 42 L.Ed.2d 78 (1974). The affidavit also showed that the Morenos had driven directly from their residence to the spot where the heroin was discovered in their car. Based on his experience in investigating narcotics cases, the affiant agent stated that in order for the Morenos to deliver a substantial quantity of heroin from their house at a short notice, additional quantities of narcotics and relevant evidence would most likely be present at the house. This conclusion was supported by Van Deventer's statements that Moreno dealt in large quantities of drugs. Based on these facts, there was probable cause to search the residence.

Appellants' argument that the short delay between Van Deventer's phone call and the beginning of surveillance at the residence provided an opportunity for Moreno to go elsewhere to get the ten ounces of heroin is not well taken. In considering the sufficiency of an affidavit of probable cause, only the probability of finding the described items at a particular location must be shown. Certainty is not required. *United States v. Fluker, supra.*

## II

### *Cruel and Unusual Punishment*

The matter of sentencing is within the discretion of the trial court and is not reviewable by an appellate court so long as the sentence is within the bounds prescribed by statute. *United States v. Kearney*, 560 F.2d 1358, 1369 (9th Cir. 1977); *United States v. Ramirez-Aguilar*, 455 F.2d 486 (9th Cir. 1972).

In this case, the sentences were long, but well within the trial judge's discretion. The defendants were large dealers in heroin and the presence of numerous firearms made their activities more dangerous. The trial judge sentenced after obtaining pre-sentence reports, and this court cannot say that there is no justification for the sentences.

## III

### *Due Process*

The allegation that the district judge increased defendants' sentences because they demanded a jury trial and refused to confess guilt is unsupported by anything in the record. *Cf. United States v. Laca*, 499 F.2d 922 (5th Cir. 1974); *Scott v. United States*, 135 U.S.App.D.C. 377, 419 F.2d 264 (1969).

The sentence imposed on Jody Moreno was not disproportionate to the sentences given to co-defendants who pled guilty. As to the appellant Raymond Moreno, the judge had ample basis in the facts as developed at trial and in the pre-sentence report to distinguish his involvement and culpability and to impose a much greater sentence. In the absence of any specific support in the record, this court cannot infer that the motive for the higher penalty was an improper one.

Appellants' reliance on *United States v. Capriola*, 537 F.2d 319 (9th Cir. 1976) is misplaced. Mr. Moreno was sentenced pursuant to the parole provisions of 18 U.S.C. § 4205(b)(2) which vests the parole board with the discretion to determine the actual amount of time to be served. The sentences in *Capriola* did not include that provision. Secondly, in *Capriola* the court found that the record was not adequately explicit to make the reasons for disparity readily discernible. Here the record forcefully discloses that Raymond Moreno was a very dangerous person and deserving of a lengthy sentence.

The judgments of conviction are affirmed.