STATE OF NORTH CAROLINA v. BARRY LEE WHITEHEAD

No. 791SC274

(Filed 7 August 1979)

1. **Arrest and Bail § 3.5; Searches and Seizures § 8— arrest as result of radio bulletin—knowledge of facts for probable cause by officer directing arrest**

    Probable cause existed for the arrest of defendant by a Tyrrell County deputy sheriff where a Manteo police officer observed a car leave the gas pumps of a service station at a high rate of speed at 2:30 a.m.; the officer pursued the car but was unable to intercept it; the officer then discovered that the currency operated self-service apparatus on a gas pump at the service station had been broken open; the officer had a radio message sent to Tyrrell County officers to be on the lookout for a described vehicle and to stop it for questioning; and the Tyrrell County deputy sheriff stopped a car fitting such description while it was being driven by defendant between 3:20 and 3:40 a.m., since the officer who actually made the arrest need not have knowledge of all the facts necessary to constitute probable cause, but it is sufficient if the officer who issued the directions for the detention or arrest has probable cause for the detention or arrest. Therefore, statements made by defendant and evidence obtained by a search after defendant's arrest were not the products of an illegal arrest.

2. **Criminal Law § 113— instructions to consider charges separately**

    The trial court's instructions, when considered as a whole, could not have misled the jury into believing that defendant could be found guilty of all three charges of forcibly breaking into a currency-operated machine if it found that he aided and abetted in the forcible breaking into only one of the machines where the record shows that the jury acquitted defendant of one of the charges; the court charged the jury that defendant was charged with three separate criminal acts; and the court submitted three separate issues to the jury on the three charges and instructed in the final mandate that the jury should "consider each of the questions separately as they pertain to three separate and distinct criminal acts charged in this court . . . ."

3. **Burglary and Unlawful Breakings § 2— breaking into currency-operated machine—requirement for warning decal not element of crime**

    The requirement of G.S. 14-56.1 that a decal be posted on coin- or currency-operated machines stating that it is a crime to break into vending machines and that a second offense is a felony does not constitute an element of the offense of feloniously breaking into a coin- or currency-operated machine in violation of G.S. 14-56.1, since such requirement was not specifically intended to appear under G.S. 14-56.1, but was placed under that statute as the result of an editorial decision when the session law creating it was codified into the General Statutes.

APPEAL by defendant from *Browning, Judge.* Judgment entered 17 January 1979 in Superior Court, DARE County. Heard in the Court of Appeals 25 June 1979.

Defendant was indicted on three separate counts of forcibly breaking into a currency operated machine after previously having been convicted of a violation of G.S. 14-56.1. By statute, a subsequent conviction of the crime raises the grade of the crime from misdemeanor to felony. Upon a trial, defendant was found guilty of two of the three charges. He was found guilty of breaking into currency operated gasoline pumps at a station operated by Daniels Oil Company in Nags Head and at the Kill Devil Hills Amoco owned by Bayside Oil Company of Kill Devil Hills. Defendant appeals from the judgment entered on the verdicts of the jury.

*Attorney General Edmisten, by Special Deputy Attorney General John R. B. Matthis and Assistant Attorney General Acie L. Ward, for the State.*

*Aldridge, Seawell & Khoury, by Christopher L. Seawell, for defendant appellant.*

MORRIS, Chief Judge.

[1] The primary question presented by defendant's appeal concerns whether evidence and inculpatory statements obtained from the defendant after his arrest should have been suppressed. Defendant contends that his detention by the Tyrrell County deputy for nearly an hour constituted an arrest, that the deputy did not have probable cause to believe a crime had been committed and that defendant had committed that crime, and that, therefore, his statements and the evidence obtained as a result of a search of his automobile after his arrest were products of the illegal arrest and thus inadmissible against him at trial. *See generally Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963); *Silverthorne Lumber Company v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). Moreover, defendant argues that the *Miranda* warnings given to him prior to questioning did not "purge the primary taint" of the unlawful arrest. *See Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed. 2d 416 (1975). The State argues that there was sufficient probable cause when the actual arrest was effectuated and, in the alter-

native, argues that the search was consensual and the inculpatory statements were voluntarily given.

Following is a summary of the evidence, elicited on the voir dire held in connection with defendant's motion to suppress, with respect to the circumstances surrounding defendant's detention, the search of his car, and his statements to law enforcement officers. Manteo Police Officer Robert D. Mauldin was on patrol in the early morning hours of 30 November 1978. As he approached Tillett Motor Company on U.S. Highway 64-264 in Manteo at about 2:30 a.m., he observed a vehicle (which he later learned was a bluish-green Gremlin) leaving at a high rate of speed the general vicinity of the self-service gas pumps. He pursued the vehicle west for approximately eight miles as far as Mann's Harbor, but he was unable to intercept it or to get a license number. He returned to the gas station and discovered that the currency operated self-service apparatus connected with the unleaded gas pump had been broken open. He then radioed the Dare County dispatcher requesting that a message be relayed to Tyrrell County, which lies west of Dare County, "to be on the lookout for a blue Pacer, with a dark blue stripe, and to stop it and hold it for questioning." Officer Mauldin testified: "I did not indicate at that time in the broadcast any suspicions to Tyrrell County of what the car was being stopped for. I did not have any warrants for anybody's arrest at that particular time." Tyrrell County officials were notified at approximately 3:00 a.m. to stop the car. Mauldin stated that he did not know when the Tyrrell County deputy was informed of the specific reason for which defendant was detained when he testified, "The first time Tyrrell County was informed of the reason for stopping this car was when the Sheriff's Department dispatcher advised him, but I could not tell you what time it was, as I was not in the office at that time."

Sometime between 3:20 a.m. and 3:40 a.m. defendant's car was stopped by a Tyrrell County deputy sheriff in Tyrrell County. Officer Mauldin received a call from the Tyrrell County Sheriff's Department identifying defendant and another passenger as the occupants of the car. Mauldin then obtained arrest warrants from a Dare County magistrate and proceeded to Tyrrell County to have the warrants served. The warrants were served, and, Mauldin testified, defendant gave him permission to search the car. He found one tire tool located between the front

bucket seats and one .38 caliber Derringer under the passenger's seat. No money was found.

Officer Mauldin testified that he first talked with defendant about the crime after he returned him to Manteo around 6:00 a.m. Between 6:30 a.m. and 7:30 a.m. Deputy Billy Brown of the Dare County Sheriff's Department advised defendant of his rights, obtained his signature on a waiver of rights form, and proceeded to interrogate him. Defendant's verbal statement implicated him in each of the break-ins.

Defendant was also questioned by Lieutenant David Griggs of the Kill Devil Hills Police Department at approximately 12:00 noon on 30 November 1978. Officer Griggs went to Manteo after he heard that two subjects were being held there for forcibly breaking into currency operated machines. Early that morning he had been called to investigate a similar crime reported at the Kill Devil Hills Amoco station. He went to Manteo "for the purpose of questioning them about the particular break-in in [Kill Devil Hills]." Griggs testified that he advised defendant of his rights, and, after defendant signed his waiver of rights form, defendant made a verbal statement allegedly implicating himself in each of the break-ins. Defendant thereafter made a written statement which according to the State's evidence contained only part of what defendant stated orally.

Defendant testified on voir dire that he was stopped by a Tyrrell County deputy sheriff who told him and his companion to get out of the car, and to go under a shelter approximately 25 feet from the car. He testified they were held there a little over an hour while the deputy called "every now and then . . . to see what he had stopped [defendant] for. . . ." Defendant testified that the deputy, in response to an inquiry concerning why defendant had been stopped, replied that he didn't know, but that "he had had a report on the radio to stop a blue Pacer." After approximately an hour defendant and his companion walked over to the Town of Columbia police station under the deputy's guard.

Defendant testified that he never gave any consent to have his car searched because he was never asked. He testified that he was questioned by Officer Mauldin between 6:00 a.m. and 7:00 a.m. on 30 November 1978 and that he was approximately three or four hours later questioned by Officer Griggs. He admitted

that he was advised of his rights each time he was questioned. Defendant denied making certain statements which Officer Griggs contended he had made orally, but which were not included in the written statement.

In our opinion, the detention of defendant was valid, and the fruits of the arrest and subsequent search of the vehicle properly admitted into evidence. First, it is not necessary to decide when as a matter of law an arrest took place. Assuming, *arguendo*, that the defendant's detention for nearly an hour at gunpoint amounted to an arrest, *compare State v. Allen*, 282 N.C. 503, 194 S.E. 2d 9 (1973), there was probable cause for the detention or arrest. *See also* G.S. 15A-401(b) and (c)(1); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968). Defendant does not argue that Officer Mauldin of the Manteo Police did not have probable cause to arrest, but he argues that the Tyrrell County deputy sheriff did not at the time the vehicle was stopped have probable cause to arrest defendant. The Supreme Court has articulated the test which determines the validity of a warrantless arrest as follows:

> "Whether [the] arrest was constitutionally valid depends . . . upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed. 2d 142, 145 (1964).

Defendant would have this Court read the mandate of *Beck v. Ohio, id.*, and other decisions articulating the test for probable cause as requiring that in every instance the officer actually effectuating the arrest have at the time of the arrest knowledge of all facts necessary to constitute probable cause. We do not believe such a holding is compelled by *Beck*. To so hold would be inconsistent with the notions of practicality which must prevail in the application of the concept of probable cause. *See Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879, 1891 (1949). Support for our conclusion is found in the decision of *Whiteley v. Warden of Wyoming Penitentiary*, 401 U.S. 560, 91

S.Ct. 1031, 28 L.Ed. 2d 306 (1971), and cases interpreting that decision.

In *Whiteley*, the Court faced the question whether a warrant issued for the arrest of defendant was based upon probable cause. The sheriff, acting on a tip, obtained a warrant for defendant's arrest for breaking and entering. He thereafter issued a bulletin over the police radio network to arrest defendant. After the Court determined that the complaint filed by the sheriff was insufficient to support the arrest warrant, it addressed the State's argument that, nevertheless, the officer who actually made the arrest based upon the radio bulletin could reasonably assume that whoever authorized the bulletin had probable cause to direct defendant's arrest. The Court responded as follows:

> "We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." 401 U.S. at 568, 91 S.Ct. 1031, 28 L.Ed. 2d at 313.

In the case under consideration, no arrest warrant had been issued at the time of the bulletin. Although we recognize that an arrest warrant issued by an independent judicial official is entitled to more deference than an individual law enforcement officer's assessment of the grounds for probable cause, we do not believe that the *Whiteley* rationale applies only when arrest warrants have been issued. The rationale of *Whiteley* recognizes the need of law enforcement officers in many situations to seek the aid of other officers in effectuating an arrest. To require that the officer who actually makes the arrest have, at that time, knowledge of all of the facts necessary to establish probable cause would unduly burden law enforcement officials without providing any significant additional safeguards for the rights of individuals. The true focus of the inquiry into the existence of probable cause for the arrest of an individual should be upon the

knowledge of the officer issuing the directions for the detention or arrest of a suspect.

The Eighth Circuit Court of Appeals reached a similar conclusion after considering *Whiteley*. In *United States v. Stratton*, 453 F. 2d 36, 37 (8th Cir. 1972), *cert. denied*, 405 U.S. 1069, 92 S.Ct. 1515, 31 L.Ed. 2d 800 (1972), the Court concluded:

> "We think the knowledge of one officer is the knowledge of all and that in the operation of an investigative or police agency the collective knowledge and the available objective facts are the criteria to be used in assessing probable cause. The arresting officer himself need not possess all of the available information."

Similar reasoning has been applied in federal decisions rendered after *Whiteley* and *Stratton*. *See e.g.*, *United States v. Neuman*, 585 F. 2d 355 (8th Cir. 1978); *United States v. See*, 505 F. 2d 845, n. 16 at 854 (9th Cir. 1974); *United States v. Smith*, 503 F. 2d 1037, 1040 (9th Cir. 1974) (search); *Government of the Virgin Islands v. Gereau*, 502 F. 2d 914, n. 9 at 928 (3d Cir. 1974), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed. 2d 323 (1976).

We are not inadvertent to our Supreme Court's opinion in *State v. Phifer*, 290 N.C. 203, 225 S.E. 2d 786 (1976), *cert. denied*, 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed. 2d 573 (1977). In that case, the Court was presented with a similar situation in which a vehicle was stopped and the defendant arrested after the arresting officer was notified by radio to stop a maroon Cadillac bearing New Jersey license plates. The Court resolved the challenge to the arrest on the traditional "reliable informant" analysis. *See Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 854, 21 L.Ed 2d 637 (1969). However, the above-cited cases support our opinion that just such an analysis is unnecessary.

Because of our conclusion that the detention of defendant was based upon probable cause, we need not discuss defendant's contention that his subsequent self-incriminating statements were the fruits of an unlawful arrest. *See Brown v. Illinois, supra*. Likewise, we need not address the challenge to the consensual search of defendant's automobile after the arrest. Defendant's sole challenge to the admissibility of the fruits of that search is in reliance upon the asserted invalidity of the arrest.

[2]  Defendant next assigns error to the manner in which the
trial court consolidated its discussion of the law with respect to
all three criminal charges. He contends that the instructions are
subject to the interpretation that defendant could be found guilty
of all three charges even if they found that he aided and abetted
in the forcible breaking into of only one of the machines. First, we
note that in fact the jury must not have been misled by the
challenged instructions. The record indicates that defendant was
acquitted of the charge of breaking into the coin operated
machines at Tillett Motor Company in Manteo. Second, the trial
court specifically instructed the jury concerning his consolidation
of the instructions on each charge as follows:

> "Now, by way of summary or introduction, I would like to
> tell you that I am going to hand you a piece of paper on
> which you will return your verdict or verdicts in this case.
> Now this piece of paper has three separate questions, and
> while I will talk about the law as it pertains to breaking and
> entering a currency-operated machine only one time; I won't
> do it as to each of the three separate cases because the law is
> the same as it pertains to each one. I would like for you to
> keep in mind, however, that we are trying three separate
> cases, and no matter what your answer to any one or two of
> these questions is, you have to answer all three questions
> because they deal with the three separate cases."

Furthermore, at the beginning of the charge the court informed
the jury that defendant was "accused of three separate criminal
acts". Similarly, in his final mandate to the jury, the court submit-
ted three separate issues to the jury on the three charges and
instructed the jury: "[Y]ou are to consider each of the three ques-
tions separately as they pertain to the three separate and distinct
criminal acts charged in this Court to which Mr. Whitehead has
pled not guilty." Although the isolated passages of the charge to
which defendant excepts, when read out of context, fail to present
the three charges as separate and distinct criminal acts, when we
consider the charge as a whole, as we must, in our opinion the
jury could not have been misled. *State v. Schultz*, 294 N.C. 281,
240 S.E. 2d 451 (1978).

[3]  Defendant's final argument is in support of his assignments
of error directed to the trial court's denial of his motions for non-

suit. Relying on the second paragraph of G.S. 14-56.1, defendant contends that a necessary element of the State's case in proving the felony charges against defendant is to prove that the machine into which defendant allegedly entered displayed a decal warning defendant that it is a crime to break into vending machines, and that a second offense is a felony. The full text of the statute as it appears in the General Statutes follows:

> "Any person who forcibly breaks into, or by the unauthorized use of a key or other instrument opens, any coin- or currency-operated machine with intent to steal any property or moneys therein shall be guilty of a misdemeanor punishable by fine or imprisonment or both in the discretion of the court, but if such person has previously been convicted of violating this section, such person shall be guilty of a felony. The term 'coin- or currency-operated machine' shall mean any coin- or currency-operated vending machine, pay telephone, telephone coin or currency receptacle, or other coin- or currency-activated machine or device.
>
> There shall be posted on the machines referred to in G.S. 14-56.1 a decal stating that it is a crime to break into vending machines, and that a second offense is a felony."

In our opinion, proof of the presence of the warning decal is not an element of either the misdemeanor or felony offense. Our review of the amended statute as it appears in the 1977 Session Laws, Chapter 723, indicates that Section 3 (now the second paragraph of G.S. 14-56.1) was not specifically intended to appear under the Section 56.1 of Chapter 14 of the General Statutes. This reinforces our opinion that the display of the decal is not an element of the crime of which defendant is charged. Section 3 of the 1977 Session Laws, Chapter 723, apparently was placed under G.S. 14-56.1 as the result of an editorial decision when that chapter was codified into the General Statutes. We decline to hold that this editorial decision adds an additional element of the crime as fully defined in 1977 Session Laws, Chapter 723, Section 1. We view the statutory language in question as no more than a directive to place warnings on the machines specified in the first paragraph of G.S. 14-56.1 so as to deter the frequent vandalism of these highly vulnerable machines.

For the foregoing reasons, we find in defendant's trial

No error.

Judges PARKER and MARTIN (Harry C.) concur. ·