## COMMONWEALTH *vs.* KEVIN E. JACKMON.

No. 02-P-760.

Bristol. June 1, 2004. - February 23, 2005.

Present: GELINAS, BROWN, & BERRY, JJ.

*Homicide. Search and Seizure,* Probable cause, Warrant, Affidavit. *Practice, Criminal,* Instructions to jury, Assistance of counsel, Sentence.

A Superior Court judge properly denied a criminal defendant's motion to suppress evidence seized by police pursuant to a search warrant and an arrest warrant for the defendant, where a police officer's affidavit adequately supported the issuance of the search warrant, in that the affidavit demonstrated both a basis of knowledge and police corroboration more than sufficient to establish probable cause that the defendant was at a particular location. [48-55]

This court concluded that defense counsel's failure to object to jury instructions on felony-murder did not deprive a criminal defendant of his constitutional right to effective assistance of counsel, where considering the totality of the jury instructions at a murder trial and the context in which the challenged felony-murder instruction was given, there was no error in the instruction. [55-56]

A criminal defendant's claim that he was sentenced for crimes of which he was not convicted lacked merit. [56]

INDICTMENTS found and returned in the Superior Court Department on July 30, 1998.

A motion to suppress evidence was heard by *John A. Tierney,* J., and the cases were tried before him; a motion for a new trial, filed on January 17, 2003, was considered by *E. Susan Garsh,* J.

*Stephen Neyman* for the defendant.

*Sharon L. Sullivan-Puccini,* Assistant District Attorney, for the Commonwealth.

GELINAS, J. The defendant, Kevin E. Jackmon, appeals from

his convictions for murder in the second degree; two counts of assault by means of a dangerous weapon[1]; unlawful possession of a firearm; two counts of kidnapping; armed robbery while masked; use of a firearm while committing a felony; and fourteen counts of stealing by confining or putting in fear. The defendant alleges (1) that the trial judge improperly denied his motion to suppress; (2) that trial counsel was ineffective in failing to object to the jury instructions on felony murder; and (3) that when sentencing, the judge erroneously considered crimes of which the defendant had been acquitted and that resentencing is consequently required. After briefly rehearsing the facts, we consider each claim in turn.

*Facts.* On April 26, 1998, Jackmon and his accomplice, Demarco Traynum, entered a McDonald's restaurant in New Bedford and forced more than a dozen employees and customers, at gunpoint, into a small back office of the restaurant. They directed one McDonald's employee to bind the hands of some of the individuals held in the office and forced the assistant manager and another employee to empty the contents of the safe and the cash registers into a canvas sack. The robbery was interrupted by the arrival of two police officers, and a shootout ensued. In the course of the confrontation, Jackmon accidentally shot and killed Traynum. Subsequently, Jackmon seized two women, one of whom was six months pregnant, and escaped from the scene of the crime while holding the two women in headlocks and firing at the police. Jackmon later left the two women in a hotel in New York City and fled to North Carolina, where he was arrested nearly two months later after his photograph was aired on the television program "America's Most Wanted."

*Motion to suppress.* On June 25, 1998, a North Carolina magistrate issued a search warrant authorizing a search of 3033 Boone Trail, Raleigh, North Carolina, for the purpose of serving a Federal arrest warrant for unlawful flight to avoid prosecution on Kevin Jackmon.[2] The detective who applied for the search

---

[1]Fourteen counts of guilty of assault with a dangerous weapon were placed on file with the defendant's consent.

[2]Absent exigent circumstances, search warrants to search third-party premises for persons subject to arrest warrants are required. In *Steagald* v.

warrant, a Raleigh police officer, submitted a sworn affidavit,[3] on which the magistrate relied, to establish probable cause for the issuance of the search warrant. With the search warrant and the ar-

*United States*, 451 U.S. 204 (1981), the court suggested that police, without search warrants, might search numerous homes of a nonresident's friends or acquaintances under the guise of looking for a nonresident for whom they have an arrest warrant. *Id.* at 215, citing *Lankford* v. *Gelston*, 364 F.2d 197 (4th Cir. 1966) (police, armed only with arrest warrants, conducted warrantless searches of 300 homes for two fugitives). See *United States* v. *Weems*, 322 F.3d 18, 23 n.3 (1st Cir.), cert. denied, 540 U.S. 892 (2003) (discussing favorably the need for a warrant to search third-party premises for person with outstanding arrest warrant and quoting 5 LaFave, Search and Seizure § 11.3[b], at 143 [3d ed. 1996] as describing analysis that would not apply *Steagald* to the arrestee's claim as "bizarre reasoning [that] would render the *Steagald* rule a virtual nullity"). The *Weems* court also quoted Harbaugh & Faust, "Knock on Any Door" — Home Arrests after *Payton* and *Steagald*, 86 Dick. L. Rev. 191 (1982): "If individuals are precluded from objecting to warrantless entries and searches of homes by their lack of standing, little incentive remains for law enforcement officers to comply with the warrant rules announced in *Payton* and *Steagald*." *Weems*, 322 F.3d at 23 n.3. See *State* v. *Cleveland*, 371 N.J. Super. 286, 299 (2004) (concluding that a person arrested on an arrest warrant in a third-party's home, where no separate search warrant had issued, might challenge the arrest with respect to goods seized from him). But see *United States* v. *Clifford*, 664 F.2d 1090 (8th Cir. 1981); *United States* v. *Underwood*, 717 F.2d 482, 484-486 (9th Cir. 1983), cert. denied, 465 U.S. 1036 (1984); *United States* v. *Gorman*, 314 F.3d 1105 (9th Cir. 2002). These latter cases suggest that the language in *Steagald* with respect to the search of third-party premises for a person subject to an arrest warrant may not apply to a defendant, such as Jackmon, who would have no expectation of privacy at 3033 Boone Trail. It may well be that, according to the reasoning in these three cases, Jackmon could not challenge either his arrest or the seizure of his property, even had a search warrant not been obtained.

North Carolina has not spoken to the issue whether a defendant who is the subject of an arrest warrant and is arrested in the residence of a third party where the search is conducted without a search warrant has either standing or a reasonable expectation of privacy to challenge his arrest, or the seizure of articles pursuant to such an arrest, absent exigent circumstances. It is instructive that the North Carolina authorities saw fit to seek and obtain a search warrant for the premises before going there to arrest Jackmon.

[3]The affidavit stated: "I, DET. A.J. WISNIEWSKI, HAVE BEEN A RALEIGH POLICE OFFICER FOR OVER 12 [YEARS]. I AM CURRENTLY ASSIGNED TO THE F.B.I. VIOLENT FUGITIVE OFFENDERS TASK FORCE. IN MY EXPERIENCE AS A DETECTIVE, I HAVE BEEN DIRECTLY INVOLVED IN THE INVESTIGATION OF AND THE ARREST OF NUMEROUS FUGITIVES AND PERSONS WANTED BY LAW ENFORCEMENT.

"ON 1-30-98 I BECAME INVOLVED IN THE INVESTIGATION OF A FEDERAL FUGITIVE NAMED KEVIN EARL JACKMON, B/M (2-10-68).

rest warrant in hand, the Federal Bureau of Investigation agents and police searched 3033 Boone Trail in North Carolina. They found and arrested Jackmon and seized a forty-caliber Ruger. pistol, a black pistol magazine loaded with ten forty-caliber rounds of ammunition, a box containing thirty-four rounds of forty-caliber ammunition, a North Carolina driver's license for Kevin E. Jackmon, a black metal device used to reload pistol magazines, and other documents belonging to Jackmon. The forty-caliber Ruger handgun fired the shot that killed the victim. Massachusetts renditioned and indicted. Jackmon alleged, in a motion to suppress, that the affidavit did not establish the requisite probable cause when gauged by the "totality of the circumstances" analysis required under North Carolina law.[4] Jackmon also alleges that the court should have required the af-

JACKMON HAS A FEDERAL U.F.A.P. (UNLAWFUL FLIGHT TO AVOID PROSECUTION) WARRANT ON HIM. THE WARRANT IS FOR ARMED ROBBERY, KIDNAPPING AND A.O.L.E.O. (WITH INTENT TO KILL). JACKMON HAS AIRED ON AMERICA'S MOST WANTED ON 6-13-98 WHEREIN A PLETHORA OF TIPS BEGAN TO ROLL IN TO THE F.B.I. ON 6-28-98 A CONFIDENTIAL INFORMANT NOTIFIED THE F.B.I. THAT JACKMON WAS STAYING AT 3033 BOONE TRAIL, RALEIGH, N.C. THE C.I. STATED THAT JACKMON IS STAYING WITH A B/F NAMED VENA CAMPBELL. FURTHER INVESTIGATION HAS REVEALED THAT VENA CAMPBELL DOES RESIDE AT 3033 BOONE TRAIL, RALEIGH, N.C. AND HAS UTILITIES IN HER NAME AT THAT ADDRESS. THE C.I. ALSO STATED THAT SHE/HE HAS SEEN JACKMON AT 3033 BOONE TRAIL ON AT LEAST TWO OCCASIONS WITHIN THE LAST TWO WEEKS. TOLL RECORDS FROM A PAGER THAT BELONGED TO PATRICIA HODGE (JACKMON'S GIRLFRIEND) SHOW THE SAME PHONE NUMBER AS LISTED FOR 3033 BOONE TRAIL, RALEIGH, N.C. THE C.I. FURTHER DESCRIBED THE ADDRESS OF 3033 BOONE TRAIL, AND THIS INFORMATION WAS CORROBORATED AS BEING ACCURATE. THE C.I. POSITIVELY IDENTIFIED JACKMON THROUGH A PHOTOGRAPH AS BEING THE SAME PERSON SEEN AT 3033 BOONE TRAIL WITHIN THE LAST TWO WEEKS.

"BASED ON THE ABOVE INFORMATION, AND THE C.I.'S CORROBORATED ACCURACY OF THE LOCATION, I REQUEST THIS WARRANT BE ISSUED."

The warrant was dated June 25, 1998, and signed by both the detective and the magistrate.

[4] At the hearing and on appeal, the Commonwealth and the defendant agreed that North Carolina law should control in determining the legitimacy of the search warrant, and the motion judge looked to that State's law in ruling that the warrant was valid. Massachusetts recognizes "the generally accepted rule that the validity of an arrest is determined by the law of the State in which the

fidavit to meet a higher standard of reliability since the affidavit was based on information provided by an anonymous informant. A judge in the Superior Court denied Jackmon's motion to suppress.[5] We affirm.

North Carolina law requires that " 'great deference should be paid a magistrate's determination of probable cause,' [although] this deference does not translate into an abdication of the court's responsibility to review the magistrate's determination." *State* v. *Beam*, 91 N.C. App. 629, 631 (1988), rev'd, 325 N.C. 217 (1989), quoting from *State* v. *Arrington*, 311 N.C. 633, 638 (1984). "[R]eviewing courts 'should not conduct a *de novo* review of the evidence to determine whether probable cause existed at the time the warrant was issued.' " *Ellis* v. *White*, 156 N.C. App. 16, 26 (2003), quoting from *State* v. *Ledbetter*, 120

arrest is made." *Commonwealth* v. *Gullick*, 386 Mass. 278, 281 (1982). Cf. *Commonwealth* v. *Ghee*, 414 Mass. 313 (1993) (challenge to a search in Connecticut was based on art. 14 of the Declaration of Rights of the Massachusetts Constitution).

In the context of searches undertaken in jurisdictions other than the one where the crime is prosecuted, a search conducted upon a military reservation in Massachusetts is subject to applicable military law, where military investigators have an independent interest in conducting an investigation and the results of the search are admissible in a State court trial of the defendant for murder. *Commonwealth* v. *Aarhus*, 387 Mass. 735, 742 (1982). Other States recognize a similar rule regarding searches, seizures, and other interceptions; the law of the State in which the search occurs informs the validity of the search. See *McClellan* v. *State*, 359 So. 2d 869, 873 (Fla. Dist. Ct. App. 1978) (evidence obtained in Alabama under an Alabama warrant was admissible in a Florida court, even though the warrant could not have been validly issued and executed under Florida law). See also *Echols* v. *State*, 484 So. 2d 568, 571 (Fla. 1985), cert. denied, 479 U.S. 871 (1986) (interests of Florida law are not served by requiring out-of-State police officials to comply with Florida law when investigating crimes committed in Florida). In at least one jurisdiction, however, an intermediate appellate court held that the law of the prosecuting State should govern the validity of the search, based on the prosecuting State's superior interest in prosecuting a major felony within its jurisdiction, see *People* v. *Rogers*, 74 Cal. App. 3d 242 (1977). In *Rogers*, the court suppressed evidence seized in New Jersey as the search did not comport with California law. On appeal, the motion to suppress was disallowed, and the court stated that it did not need to reach the issue of which State's law applied. *People* v. *Rogers*, 21 Cal. 3d 542, 548 (1978).

[5]On appeal, the defendant objects generally to the allowance of the search warrant and does not make any separate argument concerning the propriety of the arrest of the defendant at the North Carolina address as opposed to the seizure of the enumerated items.

N.C. App. 117, 121-122 (1995). The North Carolina Court of Appeals has observed that "an arrest warrant issued by an independent judicial official is entitled to more deference than an individual law enforcement officer's assessment of the grounds for probable cause." *State* v. *Whitehead*, 42 N.C. App. 506, 511 (1979).[6] Although the officer had as his ultimate purpose the arrest of Jackmon, the application here was not for an arrest warrant, but for a warrant to search certain premises for Jackmon's person, as there was already an arrest warrant in effect.[7] Without concluding that the law with respect to search warrants, as opposed to that of arrest warrants, differs, we consider North Carolina's law with respect to search warrants.[8]

In order to meet the probable cause standard for a search warrant in North Carolina, there must be "reasonable grounds to believe that the proposed search will reveal the presence of the objects sought upon the premises to be searched and that those objects will aid in the apprehension or conviction of the offender." *State* v. *Marshall*, 94 N.C. App. 20, 26 (1989).

The North Carolina General Statutes require that applications for search warrants "be supported by one or more affidavits particularly setting forth the facts and circumstances establishing probable cause to believe that the items are in the places or in the possession of the individuals to be searched." N.C. Gen. Stat. § 15A-244(3) (2004). The information must be sufficient to support an "independent judgment" on the part of the magistrate that probable cause exists. *State* v. *Harvey*, 281 N.C.

---

[6] Although stated in slightly different terms, Massachusetts law is not contrary; we require that deference be paid to the magistrate's determination of probable cause. The reviewing court should not have a " 'grudging or negative attitude . . . towards warrants' (*United States* v. *Ventresca*, 380 U.S. 102, 108 [1965])," and should "pay great deference to the magistrate's determination of probable cause (*Spinelli* v. *United States*, 393 U.S. 410, 419 [1969])."*Commonwealth* v. *Upton*, 390 Mass. 562, 568-69 (1983), rev'd, 466 U.S. 727 (1984), *S.C.*, 394 Mass. 363 (1985). "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Commonwealth* v. *Monterosso*, 33 Mass. App. Ct. 765, 770 (1992), quoting from *United States* v. *Ventresca*, 380 U.S. at 108.

[7] Jackmon does not challenge the validity of the arrest warrant.

[8] For the difference under Massachusetts law, see Smith, Criminal Practice and Procedure § 74 (2d ed. 1983).

1, 6 (1972). There is no probable cause unless the facts in the affidavit are such that a "reasonably discreet and prudent person would rely upon them." *State* v. *Arrington,* 311 N.C. at 636.

The affidavit presented to the magistrate "may be based on hearsay information and need not reflect the direct personal observations of the affiant." *State* v. *McKinnon,* 306 N.C. 288, 293 (1982), quoting from *State* v. *Campbell,* 282 N.C. 125, 129 (1972). However, hearsay information must meet a certain minimum level of reliability. Whereas Massachusetts requires that informant information meet both prongs of the United States Supreme Court *Aguilar-Spinelli*[9] test, which directs that the affiant indicate the basis of the informant's knowledge and comment on the informant's reliability, North Carolina uses the "totality of the circumstances" test articulated in *Illinois* v. *Gates,* 462 U.S. 213 (1983), to assess whether or not the information provided is sufficiently reliable to support probable cause.

The totality of the circumstances analysis requires that the magistrate "make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois* v. *Gates,* 462 U.S. 213, 238 (1983), quoting from *Jones* v. *United States,* 362 U.S. 257, 271 (1960). This test was adopted by North Carolina in *State* v. *Arrington,* 311 N.C. at 643, and involves "a balanced assessment of the relative weights of all the various indicia of reliability (and unreliabil- ity) attending an informant's tip." *Illinois* v. *Gates, supra* at 234. Although both prongs of the *Aguilar-Spinelli* test may still be considered, a deficiency in the showing under one prong may be compensated for by a strong showing under the other prong or by some other indicia of reliability, such as police cor- roboration of the facts given by the informant. *State* v. *Earhart,* 134 N.C. App. 130 (1999).

The standard for assessing reliability under the totality of the circumstances test is virtually the same whether the informant is

---

[9]*Aguilar* v. *Texas,* 378 U.S. 108, 114 (1964). *Spinelli* v. *United States,* 393 U.S. 410 (1969).

known and confidential or anonymous. *State* v. *Hughes*, 353 N.C. 200 (2000). *State* v. *Nixon*, 160 N.C. App. 31, 34 (2003). With an anonymous informant, however, "overall reliability is more difficult to establish, and thus some corroboration of the information or greater level of detail is generally necessary." *Ibid.*

In considering both the sufficiency of the affidavit and the reliability of the informant, we must first evaluate probable cause in the context of the objective of the application for the warrant. In North Carolina, as in other jurisdictions, the bulk of search and seizure cases involve an evaluation as to whether an informant's tip established probable cause that a crime had been committed, or whether a tip was sufficient to justify a warrantless search. See, e.g., *State* v. *Earhart*, 134 N.C. App. 130 (1999); *State* v. *Hughes*, 353 N.C. 200 (2000); *State* v. *McArn*, 159 N.C. App. 209 (2003). Here, however, the application sought a warrant for locating a fugitive for whom a Federal felony arrest warrant had already been issued. The primary purpose of the search warrant here was to establish probable cause that the fugitive was present at a third-party's home.

"The fourth amendment prohibits the entry into a home in order to make a felony arrest, absent a valid search warrant, consent or exigent circumstances." *State* v. *Johnson*, 310 N.C. 581, 582 (1984), citing *Steagald* v. *United States*, 451 U.S. 204 (1981). Here the officers had both a search warrant for the location and an arrest warrant for the defendant. The informant's information, upon which the affidavit was based, needed only to establish probable cause that Jackmon was at 3033 Boone Trail, and not probable cause that Jackmon was a fugitive or had committed criminal actions.

We conclude that the affidavit is sufficient. The affidavit indicates that, in addition to a first-hand sighting, the informant also knew the name and address of the person with whom the defendant was staying. The informant apparently met with officers and identified the defendant in a photograph. Thus, the defendant's characterization of the informant as anonymous is erroneous. The police also independently verified that telephone calls from this address were going to someone known to the defendant (his girlfriend). Under either the *Aguilar-Spinelli* or

the totality of the circumstances test, the affidavit demonstrated both a basis of knowledge and police corroboration more than sufficient to establish probable cause that the defendant was at 3033 Boone Trail. It was allowable to seize the items taken. The motion to suppress was properly denied.

*Jury instructions.* Jackmon claims that he was denied his constitutional right to effective assistance of counsel because his trial counsel failed to object to the court's instructions on felony-murder. We affirm the judge's denial of Jackmon's motion for a new trial on this ground.

In considering Jackmon's allegation, we must examine "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

The defendant claims that the trial judge's instructions on felony-murder failed to account for the defense, raised at trial, that the victim accidentally fell on his gun and killed himself. Although there is no question that accident is not a defense to felony-murder, see *Commonwealth* v. *McCauley*, 391 Mass. 697, 704 (1984), cert. denied, 534 U.S. 1132 (2002), the defendant argues that, in the context of the defense presented at trial, his counsel was ineffective for failing to object to the judge's instruction to that effect. The defendant contends that the instruction that "accident is not a defense to felony murder" could have led the jury to reason that an accident precipitated by the *victim* was not a defense.

At least twice in the course of giving instructions, the trial judge correctly instructed the jury on the defendant's "accident defense." He stated, "[I]n order to find this defendant guilty of murder in any degree, the Commonwealth must have proven to you beyond a reasonable doubt that the victim . . . was killed by this defendant, and not by the police and not by his own accidental or unintentional shooting of the weapon." Again, in response to a jury inquiry concerning the elements of murder in the first and second degrees, the trial judge stated, "[F]irst of

all, you won't even consider the indictment charging this defendant with murder unless the Commonwealth has proven to you beyond a reasonable doubt that Mr. Jackmon fired the bullet which killed Mr. Traynham." In light of these instructions, the judge's comment regarding the "accident defense" was an accurate statement of the law and not prejudicially misleading or confusing. We conclude, in considering the totality of the jury instructions and the context in which the challenged instruction was given, that there was no error in the instruction and, thus, that defense counsel was not ineffective. See *Commonwealth* v. *Blake*, 409 Mass. 146, 152 (1991).

*Sentencing.* It is well-established that this court will not review a lawful sentence. *Commonwealth* v. *D'Amour*, 428 Mass. 725, 746 (1999). "That authority is delegated to the Appellate Division of the Superior Court." *Ibid.* This court may, however, "review the penalty imposed upon a defendant for a crime other than that for which he stands convicted." *Commonwealth* v. *Coleman*, 390 Mass. 797, 804 (1984). The defendant here contends that the judge sentenced him for crimes of which he was not convicted. Specifically, the defendant argues that the judge incorrectly sentenced him for two counts of G. L. c. 265, § 18(*b*).[10] We disagree.

Although the defendant was acquitted of both counts charging him under G. L. c. 265, § 18(*b*), with assault with intent to murder two police officers, the jury found him guilty of two counts of assault with a dangerous weapon against the same two police officers.[11] The judge sentenced the defendant on these two counts of assault with a dangerous weapon; he placed the remaining convictions for assault with a dangerous weapon on file with the defendant's consent. There was no error in so doing.

*Judgments affirmed.*

*Order denying of motion for new trial affirmed.*

---

[10]The defendant does not raise any argument on the remaining sentences.

[11]As previously indicated, see note 1, *supra*, the defendant was convicted of fourteen additional counts of assault with a dangerous weapon.