# United States Court of Appeals
## For the First Circuit

---

No. 02-1765

UNITED STATES,

Appellee,

v.

GARRY JULIEN,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

---

Before

Boudin, Chief Judge,
Torruella and Lynch, Circuit Judges.

---

William Maselli for appellant.

Margaret D. McGaughey, Appellate Chief, with whom Paula
D. Silsby, United States Attorney, was on brief for appellee.

---

February 3, 2003

---

**LYNCH**, **Circuit Judge**.  Garry Julien was charged with conspiracy with intent to distribute cocaine base and possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841 (2000) and 18 U.S.C. § 2 (2000).  He was tried in December 2001 along with a codefendant, Brian Goodine.  The five-day trial ended with a conviction for Goodine but a hung jury for Julien; over Julien's objection, the district court declared a mistrial on the charges against him.

After trial, Julien moved to dismiss the indictment on the basis that a second trial on the charges would violate the Double Jeopardy Clause.  U.S. Const. amend. V.  The district court denied the motion.  At the second trial, Julien was convicted on the possession with intent charge.  He now appeals the denial of his motion to dismiss the indictment.  He also raises insufficiency of the evidence and prosecutorial misconduct claims.  We reject all of his claims and affirm the conviction.

I.

We sketch only the basic facts here, and delve into the details, where they are relevant, in the legal analysis.  Julien was arrested on March 19, 2001, when the police responded to a report from a motel manager in Saco, Maine about the odor of marijuana coming from a room.  When the police entered, they found Julien, Goodine, and two other occupants (Ricardo King and Bertram Leslie).  There was drug paraphernalia, cash, and a small quantity

of loose marijuana and bagged crack cocaine in the room. On the ground outside the room's open window, police discovered approximately 200 grams of crack cocaine in a plastic bag, as well as some marijuana, razor blades, an electronic scale, and a plate with what appeared to be cocaine residue. Julien, King, and Goodine were indicted; King became a cooperating witness against the others and testified at both trials. Leslie was not charged; he also testified at both trials.

The first trial, with Julien and Goodine as defendants, began on Monday, December 10, 2001. The jury heard some fourteen hours of testimony over the following three and a half days, and began deliberating just before 1 p.m. on Thursday, December 13. The next day at 8 p.m., after sixteen total hours of deliberations, the jury indicated that it was deadlocked on charges against one defendant. The court accepted a guilty verdict as to Goodine and declared a mistrial as to Julien.

Julien moved to dismiss the indictment on double jeopardy grounds on December 21, 2001. In a comprehensive Memorandum and Order issued January 4, 2002, the district court denied the motion. Julien did not take an interlocutory appeal of that denial before the second trial, as he was entitled to do under Abney v. United States, 431 U.S. 651, 662 (1977). Instead he chose to undergo the second trial before raising the double jeopardy issue on appeal.

Julien's second trial, held before a different judge in March 2002, ended with his conviction on the charge of possession with intent to distribute; there was a hung jury on the conspiracy count.  On the government's motion, the indictment on the conspiracy charge was dismissed on June 12, 2002.

II.

Julien's appeal raises four issues.  He argues that there was no manifest necessity for the declaration of a mistrial in the first trial; that there was insufficient evidence at the first trial to support a conviction, both as to conspiracy and as to possession with intent to distribute; that the evidence on both counts was insufficient at the second trial; and that certain actions by the prosecution in the two trials constitute government misconduct.

A.  Mistrial and Double Jeopardy

The Double Jeopardy Clause requires that no person "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.

For a defendant, there are serious consequences stemming from enduring two trials on a single set of criminal charges. Among other things, the government may gain an advantage at the second trial for having seen the defense case at the first trial. As a result, courts do not lightly grant mistrials after jeopardy has attached.  See Illinois v. Somerville, 410 U.S. 458, 471

-4-

(1973).  Still, a hung jury is the classic instance where a mistrial may be warranted, and that has been so in our jurisprudence for at least 175 years.  See United States v. Perez, 22 U.S. (9 Wheat.) 579 (1824) (Story, J.).  The government must shoulder the "heavy" burden of justifying a mistrial by demonstrating the "manifest necessity" for a mistrial when the defendant objects.  Arizona v. Washington, 434 U.S. 497, 505 (1978).

Our review of a district court's decision that there was manifest necessity justifying the declaration of a mistrial is for abuse of discretion.  Id. at 510 & n.28.  There is case law suggesting that where constitutional concerns are raised by the denial of a motion to dismiss premised on double jeopardy grounds, as here, then the ultimate conclusion is reviewed de novo, see United States v. DiPietro, 936 F.2d 6, 8 (1st Cir. 1991), while the subsidiary factual determinations are reviewed only for clear error.  United States v. Bradshaw, 281 F.3d 278, 291 (1st Cir. 2002).  In practice, though, the reviewing court reviews whether the district court abused its discretion, subject to heightened rigor in the review.  United States v. Keene, 287 F.3d 229, 233 (1st Cir. 2002); Bradshaw, 281 F.3d at 291.  Errors of law, of course, constitute abuse of discretion.  Koon v. United States, 518 U.S. 81, 100 (1996).

In reviewing the mistrial determination we look, inter alia, at whether the district court considered all the relevant factors, including the availability of alternatives to mistrial; the positions taken by the parties at trial and whether they had an opportunity to state their positions; and whether the court's decision was deliberative in nature. See Keene, 287 F.3d at 234; United States v. Simonetti, 998 F.2d 39, 41 (1st Cir. 1993).

Julien makes two assertions to be evaluated in this manner against the facts and the trial court's decision. First, he says that the mistrial was declared at 8 p.m. on Friday night, when the jury was exhausted and should have been given the option of going home for the weekend and returning refreshed on Monday morning. Second, he notes that the jury deliberated for three hours after stating that it had reached a verdict on one defendant but not the other; he argues that the jury therefore spent only three hours focused on Julien alone and that this was an insufficient amount of time.

The course of deliberations was as follows. The jury began deliberations at 1 p.m. on Thursday, December 13. At 5:30 p.m., in response to an offer from the court to send in dinner, the foreperson sent a note which read, "We are not even close to a verdict in either, do we have the option of coming back tomorrow? We are very far apart." After consultation with counsel, the court gave the jury the choice between deliberating longer that night or

resuming in the morning. The jurors opted to go home for the evening.

The jury deliberated the second day, Friday, from 8:30 a.m. until 4:30 p.m. Shortly before 4 p.m. the foreperson sent a question asking why the jury had to decide drug quantities on the verdict form. The court answered the question and half an hour later another note came, stating in full, "We have reached a decision on one defendant, but cannot agree on the second." After some consultation between the judge and counsel, Julien proposed that the court deliver an Allen instruction, see Allen v. United States, 164 U.S. 492, 501 (1896), and then have the jury deliberate for another hour before accepting its partial verdict.

The court gave a modified Allen charge. It then inquired whether the jury wanted to keep working that evening or "whether you feel at this time the jury is so exhausted that you need to go home and return on Monday morning." The jurors chose to work further that evening. An hour later, the jury asked a question about the dates of the conspiracy, which the court answered.

At 7:50 p.m., nearly three hours after the Allen charge, another note came: "The jury is deadlocked on both counts for one of the defendants. There has been no movement and [we] foresee no movement in further deliberations." Julien asked that the jury be sent home and resume deliberations on Monday. The trial court

decided to take the verdict on one defendant and declare a manifest necessity mistrial on the other.

As the district court noted, the jurors had indicated difficulty reaching agreement three times: first saying they were "far apart," then that they "cannot agree," and finally that they were "deadlocked." The last note came after a total of sixteen hours of deliberation in a case which was not complex and involved only fourteen hours of testimony. See United States v. Barbioni, 62 F.3d 5, 7 (1st Cir. 1995) (upholding manifest necessity mistrial after almost ten hours of deliberations following short, simple trial). Counsel was consulted at every stage. Contrary to Julien's assertions, the record does not establish that the jurors were too exhausted to deliberate further; the court asked them if they were, and they elected to continue deliberating. Nor does the record indicate, as Julien argues, that the jurors had not completed significant deliberations concerning Julien before the note indicating agreement on Goodine; rather, the jury's questions and other notes suggest that it was conscientiously considering the charges against both defendants.

The jury had reported that further efforts would be fruitless. As the trial judge surely was concerned, there was a risk that a jury forced to continue to deliberate after it reported deadlock would compromise too easily, simply to be able to go home. Such compromise might well have worked to Julien's detriment rather

than to his benefit.  There was no abuse of discretion in granting the mistrial or in denying the subsequent motion to dismiss.[1]

B.  <u>Sufficiency of Evidence at First Trial</u>

Julien argues that there was insufficient evidence to support a conviction at the first trial.  Although not argued as such, Julien's theory seems to be that if the evidence at the first trial is insufficient and the trial ends in a mistrial, a different double jeopardy argument is presented to bar the government from proceeding to retrial.  Julien does not indicate a basis in law for him to present this issue.

The government replies that, because there was no conviction at the first trial, this claim is moot.  The government correctly notes that the conspiracy count did not result in conviction at the second trial and has now been dismissed, and so there is no live controversy as to that count.  That still leaves the possession with intent to distribute count.

---

[1] The government raises, but does not press, the question of whether this court should consider Julien to have waived any double jeopardy argument by declining to take the interlocutory appeal to which he was entitled under <u>Abney</u>, 431 U.S. at 662, and instead submitting to a second trial before he raised the double jeopardy grounds on appeal.  This court has not ruled on the question, nor has the Supreme Court. <u>Abney</u> itself says that in such circumstances "a defendant <u>may</u> seek immediate appellate review," <u>id.</u> at 663 (emphasis added), not that he must do so.  There are reasoned arguments to be made on both sides of this question.  We need not decide the issue, since we uphold the manifest necessity finding.

We will assume dubitante, in Julien's favor, that he is in fact asserting a double jeopardy argument. Nonetheless, Julien does not present a viable issue. In Richardson v. United States, 468 U.S. 317 (1984), the Supreme Court held:

> the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy. Since jeopardy attached here when the jury was sworn, petitioner's argument necessarily assumes that the judicial declaration of a mistrial was an event which terminated jeopardy in his case and which allowed him to assert a valid claim of double jeopardy.
>
> ... [T]he failure of a jury to reach a verdict is not an event which terminates jeopardy.

Id. at 325 (citations omitted); see also Sattazahn v. Pennsylvania, 123 S. Ct. 732, 737-39 (2003) (comparing different effects of mistrial and acquittal on double jeopardy protections). Because jeopardy does not terminate when the court declares a valid mistrial based on the inability of the jury to agree, defendant's claim of insufficiency of the evidence at the first trial presents "no valid double jeopardy claim to prevent his retrial." Richardson, 468 U.S. at 326; accord United States v. Willis, 102 F.3d 1078, 1081 (10th Cir. 1996); United States v. Coleman, 862 F.2d 455 (3d Cir. 1988).

To give Julien the benefit of all conceivable arguments, we consider whether there is a due process or non-constitutional claim, separate from the double jeopardy claim, that he is entitled to have the sufficiency of the evidence at the first trial

-10-

determined at some point.  Under Richardson, a denial of a motion to dismiss for insufficiency of the evidence is an interlocutory order; it is not appealable after a mistrial and before a second trial except on double jeopardy grounds (grounds which the Supreme Court has rejected on the merits).  The defense argument would be that there is a final appealable judgment after a conviction at the second trial, and Julien may then appeal otherwise non-final rulings when he appeals from that judgment of guilt.  Although Richardson does not expressly foreclose this point, there is language in both Justice Rehnquist's majority opinion and Justice Stevens' dissent which tends to demonstrate that the Supreme Court's majority would be inhospitable to such a claim.  See 468 U.S. at 326; id. at 334-35 (Stevens, J., dissenting); see also 15B Wright, Miller & Cooper, Federal Practice & Procedure § 3918.5, at 496-97 (2d ed. 1992).  That inhospitality governs our decision.  We hold that defendant may not, on appeal from a judgment of guilt in a second trial following a mistrial, then raise a claim that he was wrongly denied his motion for acquittal on insufficiency of the evidence at the first trial.

This court has also applied Richardson in a related context to hold that a defendant may not argue that the vacating of his conviction for legal error on direct appeal from his first trial permits an evaluation of the sufficiency of the remaining evidence at the first trial.  United States v. Porter, 807 F.2d 21,

24 (1st Cir. 1986); see also United States v. Carrillo-Figueroa, 34 F.3d 33, 38-39 (1st Cir. 1994) (double jeopardy claim concerning insufficiency of evidence at first trial waived by defendant's request for mistrial, but Richardson would foreclose claim even if preserved); United States v. Reis, 788 F.2d 54, 56-57 (1st Cir. 1986) (no different standard applies to motion of acquittal after mistrial compared to other motions for acquittal).  It is not open to Julien to make an argument based on insufficiency of the evidence at a trial which ended in a mistrial.

C.  Sufficiency of Evidence at Second Trial

Julien also argues that the evidence at the second trial was insufficient to show possession with intent to distribute.[2]  In reviewing this claim we take the evidence in the light most favorable to the government; Julien must show that no rational jury could have convicted him.  United States v. Collazo-Aponte, 216 F.3d 163, 191 (1st Cir. 2000).

Julien argues that the jury most likely convicted him on an aiding and abetting theory as to the events on March 19, 2001, the date of his arrest in the motel room.  He argues that the evidence established only that he was present that day, with knowledge that others there possessed drugs, perhaps for sale.  In any event, he says, proof was not beyond a reasonable doubt.

_____

[2]  As noted above, no challenge to the evidence on the conspiracy charge is available because that charge was dismissed.

-12-

There was sufficient evidence at the second trial of possession with intent to distribute cocaine. King testified that Julien obtained cocaine from his own sources in New York and sold the drugs in Maine. There was evidence that Julien had rented another motel room in Old Orchard Beach from which drugs were sold. Telephone records showed calls were made from the room to a number of crack cocaine users in the area. Penny Oulette testified that she had regularly purchased crack cocaine from Julien, King, and Goodine, including on a visit to the raided motel room a day or two before the arrests.

When the police entered the motel room on March 19, Julien and King were both near the open window; the jury could infer that Julien threw the incriminating evidence out the window. After the police entered, an officer saw Julien jump from beside the window to the nearest bed. Under the bed where Julien landed was $900 in cash.

Julien testified in his own defense that it was King who threw the drugs and paraphernalia out the window, that he did not deal cocaine, that he had rented the Old Orchard Beach motel room as a favor to King, and that he knew nothing of the cash or the drug paraphernalia in the Saco motel room. Goodine also testified on Julien's behalf, denying that either of them sold drugs.

The jury's decision came down to an assessment of the credibility of these various witnesses. Julien had ample

-13-

opportunity to impeach the government's witnesses.  A reasonable jury could certainly conclude that Julien was in knowing possession of drugs intending to sell them or that, at least, he was aiding and abetting others who were doing so.  Julien has not met the high bar required to overturn a jury verdict.

D.  <u>Prosecutorial Misconduct</u>

Julien makes prosecutorial misconduct claims arising out of both the first and second trials.  There are no claims available related to the first trial because no conviction resulted.  The principal claims of misconduct in the second trial arise out of the government's use of King and Leslie as witnesses.  Julien says Leslie's testimony at the second trial was inconsistent with his testimony at the first trial, that aspects of King's testimony were inherently implausible, and that the government recognized as much. Julien was able to take advantage of both points on impeachment. The trial court properly instructed that issues of credibility were for the jury.  There was no misconduct; neither was there error. Julien received a fair trial.

Julien's conviction is **<u>affirmed</u>**.