# United States Court of Appeals
## For the First Circuit

No. 02-1338

UNITED STATES,

Appellee,

v.

IKE WEEMS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, Chief U.S. District Judge]

Before

Torruella, Lynch, and Howard, Circuit Judges.

Robert B. Mann, with whom Mann & Mitchell was on the brief for appellant.

Donald C. Lockhart, Assistant United States Attorney, with whom Margaret E. Curran, United States Attorney, and Dulce Donovan, Assistant United States Attorney, were on brief for appellee.

March 6, 2003

**LYNCH**, **Circuit Judge**.  Ike "True" Weems was convicted of being a felon in possession of a firearm, a revolver which fired shotgun shells.  See 18 U.S.C. § 922(g)(1) (2000).  He was sentenced to 282 months of imprisonment.  On appeal, Weems argues that the district court erred in denying his motion for judgment of acquittal and his motion to suppress.  He also appeals various aspects of evidentiary rulings, the jury instructions, and the sentencing.  We affirm.

We reject the argument that Jones v. United States, 529 U.S. 848 (2000), overruled prior law and now requires that the interstate commerce nexus of § 922(g) be met by proof that it was the defendant who transported the weapon beyond state lines.  We also reject the argument that the phrase "not less than fifteen years" for sentences under the Armed Career Criminal Act (ACCA), see 18 U.S.C. § 924(e)(1), sets a maximum as well as a minimum sentence.

I.

A brief summary of the facts sets the stage.  On December 11, 2000, the date Weems was arrested, the police had information that he was wanted on two state arrest warrants; that he had been seen by an informant carrying the firearm at issue here earlier that day; that he was suspected of armed robbery; and that he was believed to be dealing drugs from a house at 11 Padelford Street in Providence, Rhode Island, where he had been seen regularly.  After

-2-

receiving a report from a confidential informant that Weems was at the address, the police went quickly to the house without obtaining a separate search warrant. There, they saw Weems through a window and entered the house. Weems hid in the attic but his feet went through the attic floor to the bedroom below, and the police assisted his delivery into the room by pulling on his legs while he clung to the rafters. Weems fell on a bed and there was a tussle. Within seconds the police spotted a gun on the bed where Weems had fallen -- the same unusual gun, a "Thunder Five" revolver that could fire shotgun shells, with which he had been seen earlier that day. He was arrested.

II.

We start with the appeal from the denial of the motion to suppress, because its outcome affects the appeal from the motion for judgment of acquittal.

A.  The Motion to Suppress

We describe the facts found by the district court judge, which were established at a two-day evidentiary hearing.

Weems moved to suppress the evidence seized at 11 Padelford Street, including the gun. The basis for the motion was that the initial entry into the residence, which was rented by Katisha Smith, was not justified by the state arrest warrant for Weems; that the police had used the arrest warrant as a pretext to enter the house and did not have a search warrant as was needed;

and that, in any event, the seized gun should be suppressed because it was not in plain view and it was found pursuant to an unauthorized search after a protective sweep had already taken place.

The district court assumed that the entry into the house was valid and held it was irrelevant whether the house was Weems's dwelling or only Smith's dwelling. The court stated, "The only issue here is whether the outstanding arrest warrant was used by the agents as a pretext for conducting a warrantless search and whether the items seized were the fruits of such a warrantless search" as opposed to a protective sweep. The court found that the gun was in plain view and was lawfully seized pursuant to a protective sweep.[1]  See Maryland v. Buie, 494 U.S. 325, 334-36 (1990). Indeed, in discussing the seizure of the gun, the court referred to concerns for the officer's safety "because Mr. Weems had a lengthy criminal record for violent crimes, armed robbery." The district court did suppress other evidence taken from the house, which the court found was not seized pursuant either to Weems's arrest or to a protective sweep.

When the officers arrived at the address, they knew that Weems had a lengthy criminal record, that there were two state

---

[1]     "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." Maryland v. Buie, 494 U.S. 325, 327 (1990).

-4-

arrest warrants for him, and that Weems had been seen carrying the gun earlier that day. One warrant was on a suspended sentence violation related to a prior sentence for felony assault with a dangerous weapon. They also had information that "True" Weems and "Understanding" Yates had conducted armed robberies in the Providence area; the armed robbers were known as the "Five Percenter Group." In late October, a reliable informant told Agent Edward Troiano of the federal Bureau of Alcohol, Tobacco, and Firearms that Weems had been staying off and on at 11 Padelford Street for the past few weeks or months and was dealing drugs from that address. In early November the police arrested Yates, but his companions, including Weems, escaped.

On December 11, an informant told Troiano that Weems was then inside the Padelford Street home and that he was armed with his shotgun revolver. Troiano contacted Providence police, and went with police officers to the address about half an hour later. They did not try to obtain a search warrant for the residence.

Outside the building, Troiano encountered Smith, who lived there, and told her they had an arrest warrant for Weems. She said that no one lived with her, that no one was in the house, and that she did not know Weems. A picture is worth a thousand words: while he was talking to Smith out front, other officers saw Weems stick his head and torso out of a rear window of the house.

-5-

They called up to Weems but he disappeared inside. He was told to come outside; he did not.

Troiano testified that, had the officers not seen Weems, they would have left. Because they did see Weems, it became a different matter. They told Smith they had seen Weems in the house and asked for the key. She declined, but when told the alternative was that the police would break down the door, she handed over the key. The police opened the door to the house and yelled that they were police and had a warrant for Weems's arrest. There was no response.

The officers started a protective sweep of the house, including the two bedrooms; this routinely involves looking to be sure no one is hiding under beds or behind furniture. The officers did not find Weems, but they noticed a small opening to the attic in a closet and yelled for Weems to come down. They heard footsteps above and sprayed pepper spray into the attic. Weems's feet broke through the ceiling once and he pulled himself back up into the attic; when it happened again the officers pulled him through into the room below. Understandably, the officers paid attention to his hands, which were still in the attic. No officer saw Weems hold a gun or saw a gun on his way down. On the bed, Weems landed face down and kept his hands underneath himself. He was subdued by the police and made to stand up; as he was being

arrested and moved from the room, an officer looked down at the bed and saw the shotgun revolver on the box spring.

Weems argues that the entry into the house violated the Fourth Amendment, as did the seizure of the gun. If Weems effectively lived at 11 Padelford, the arrest warrant itself would be enough to authorize entry into his residence to effectuate his arrest. Payton v. New York, 445 U.S. 573, 603 (1980); see also United States v. Gay, 240 F.3d 1222, 1226-27 (10th Cir. 2001) (Payton allows entry because officers had reasonable belief that subject of arrest warrant lived at the house they entered). There is some evidence to support that view of the facts, but the district court made no findings on this point, so we bypass it.[2]

As this court stated, sitting en banc in Joyce v. Town of Tewksbury, 112 F.3d 19, 21-22 (1st Cir. 1997) (en banc) (per curiam), "even when armed with an arrest warrant, police must generally have a search warrant to enter lawfully a third person's home." Accord Fletcher v. Town of Clinton, 196 F.3d 41, 49 (1st Cir. 1999). In each of these cases, the resident of the house pursued the Fourth Amendment claim. Our rule is based on Steagald v. United States, 451 U.S. 204 (1981). Steagald considered "whether, under the Fourth Amendment, a law enforcement officer may

---

[2]    In her testimony at the suppression hearing, Smith was explicit that Weems did not live there and had no authority to invite people in, although he had a key and paid her to rent a closet.

-7-

legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant."  Id. at 205.  The Court concluded that "a search warrant must be obtained absent exigent circumstances or consent."  Id. at 205-06.[3]  No one seriously contends that Smith voluntarily consented, when presented with the choice of giving over the keys or having her door broken down.  Assuming Weems may raise the Fourth Amendment claim, the question is whether exigent circumstances were present.  See Joyce, 112 F.3d at 22.

---

[3]    The government argues that the Steagald rule does not apply when it is the arrestee rather than the resident who raises the Fourth Amendment issue.  There is authority from some circuits to support the government's view.  See United States v. Gorman, 314 F.3d 1105, 1110-11 (9th Cir. 2002); United States v. Kaylor, 877 F.2d 658, 663 (8th Cir. 1989); United States v. Buckner, 717 F.2d 297, 299-300 (6th Cir. 1983).
There are also, however, arguments against this narrow view of the claim's availability to the arrestee.  Steagald itself says that "most modern commentators agree that a search warrant is necessary to fully protect the privacy interests of third parties when their home is searched for the subject of an arrest warrant."  421 U.S. at 208 n.3 (citing commentators).  The leading treatise describes analyses that would not apply Steagald to the arrestee's claim as "bizarre reasoning [which] would render the Steagald rule a virtual nullity."  5 W.R. LaFave, Search and Seizure, § 11.3(b), at 143 (3d ed. 1996).  "If individuals are precluded from objecting to warrantless entries and searches of homes by their lack of standing, little incentive remains for law enforcement officers to comply with the warrant rules announced in Payton and Steagald."  J.D. Harbaugh & N.L. Faust, "Knock on Any Door" -- Home Arrests After Payton and Steagald, 86 Dick. L. Rev. 191 (1982).
Here, since we assume that Smith and not Weems is the resident, the government's view might bar Weems from raising the claim.  For purposes of this appeal, we will assume without deciding, in Weems's favor, that he may bring the claim.

The government argued to the trial court that the initial entry was justified by exigent circumstances and we agree. Weems was known to be armed with a dangerous weapon and to have a history of assault; he was seen at the premises and was evidently trying to escape; he had the opportunity to destroy or hide drugs or the gun, both illegal in his hands. There was a need to act quickly, and Weems had been given ample opportunity to surrender. See generally Fletcher, 196 F.3d at 49-51 (discussing exigent circumstances). The initial entry did not violate the Fourth Amendment.

The focus of Weems's argument to the district court was that the arrest warrant was a "pretext" used by the Providence police to raid a house for which they had no search warrant. The entire premise of the attack is misplaced. The question is not one of pretext, and the subjective intent of the police plays no role in the analysis of a motion to suppress under the Fourth Amendment. See Whren v. United States, 517 U.S. 806, 813 (1996). Rather, the question is whether the entry and later activities were objectively reasonable under the Fourth Amendment.

The district court was also quite correct to conclude that the gun was found in plain view in the course of the arrest, so we need not reach the other grounds for affirmance offered by the government.

B.  Arguments Based on the First Trial

The first trial on these charges ended in a mistrial, to which Weems consented.  See United States v. Weems, No. 01-2080 (1st Cir. August 23, 2001) (order).

Weems attempts to use the first trial in several ways. He argues that the court erred in not granting a judgment of acquittal at the end of the first trial.  Our recent decision in United States v. Julien, 318 F.3d 316, 320-22 (1st Cir. 2003), forecloses this claim, as Weems's counsel correctly acknowledged at oral argument.

Weems also argues that the prosecutor may not present a theory at the second trial inconsistent with the theory argued at the first trial.  We do not see why not.  Weems says his argument follows from an emerging doctrine that a prosecutor may not argue inconsistent theories to a jury.  In support he cites K. Miller, Feature, Combating the Prosecutor's Improper Utilization of Inconsistent Theories, 26 Champion 16, 18 (June 2002).  See also Smith v. Groose, 205 F.3d 1045, 1051-52 (8th Cir. 2000).  We see no risk to defendants' rights when two different juries are involved. In any event, we think the logic of Julien also forecloses this attack.

Finally, Weems attempts to go back to the initial declaration of mistrial in order to undo it and raise a double jeopardy argument now.  This is another attempt to argue that there

is insufficient basis to show that Weems consented to the mistrial. We have already disposed of this claim in our order of August 23, 2001, in response to his earlier appeal, which stated, "the record in this case makes clear that defendant consented to the declaration of a mistrial."

C. Sufficiency of the Evidence at the Second Trial

The facts which follow are described in the terms most favorable to the verdict of guilt, as to the denial of the motion for judgment on the pleadings. United States v. Morillo, 158 F.3d 18, 22 (1st Cir. 1998).

The crime of conviction requires that the government have shown beyond a reasonable doubt that Weems was a "felon" and was "in possession of a firearm." That Weems was a felon there is no dispute. This aspect of his appeal questions whether he was "in possession" of the firearm.

Weems argues that there was insufficient evidence of either actual possession or constructive possession. The jury was instructed on both theories. Weems correctly says that mere proximity to a weapon is not sufficient to show actual or constructive possession. See United States v. Smith, 292 F.3d 90, 99 (1st Cir. 2002). The defense theory was that Weems had only an attenuated connection with 11 Padelford Street, that people went in and out of the apartment (including some troubled youth who had met

-11-

there that day in a program), and that the gun was left there by someone else.

The evidence was adequate; much more than mere proximity was shown here.  The gun was found on the bed just after Weems fell there and was made to stand up.  One of the officers who had conducted the security sweep testified that, in doing so, he had lifted the mattress and box spring and slid them apart somewhat, and had noticed no gun.  Smith said she did not have any firearms in the apartment.

The gun came from somewhere.  Defense counsel did not argue that the gun was planted by the police; in light of the testimony by an informant that had seen Weems with this very gun earlier, such a hypothesis for the sudden presence of the gun would fail.  The fact that the police did not see the gun in Weems's hand and failed to see it fall with him onto the bed hardly helps him.  A gun tucked in Weems's waistband or inside his shirt would be easily dislodged in the scuffle.  The jury had sufficient evidence to conclude that there was actual possession.

D.  Evidentiary Rulings

A trial court's determination of the scope of cross-examination is reviewed for abuse of discretion.  See United States v. Morla-Trinidad, 100 F.3d 1, 4 (1st Cir. 1996).  The same standard applies to challenges to evidentiary rulings made by the

trial court, other than of legal interpretations of the rules. <u>See</u> <u>Smith</u>, 292 F.3d at 98.

Weems first objects to the government's cross-examination of his witness, Sandra Hurt, a neighbor and relation of Smith who was in front of 11 Padelford during some of the police activity. The government was permitted to ask about what Hurt had observed at the house on previous occasions, but not about what she had been told by others. She testified as to "activity" at 11 Padelford but did not specify what it was. Weems objects on appeal that the witness left the clear and prejudicial impression that this was a drug house. At trial the objections were intermittent but, in Weems's favor, we will take them as preserved. As in <u>Smith</u>, 292 F.3d at 97-98, the evidence of drug dealing at the house was relevant. It certainly gave Weems a motive to have the gun on him. <u>See</u> Fed. R. Evid. 404(b). Indeed, given the defense theory, Smith's testimony could be viewed as helpful to Weems, which may explain the intermittent nature of the objections. In any event, the district court did not abuse its discretion in finding prejudice outweighed by the probative value of this evidence.

Potentially more significant is the restriction of Weems's cross-examination of a Providence detective concerning certain details of the lenience granted to the informant on other charges. That informant's crucial statements both tied the weapon to Weems and supported the exigent circumstances entry. However,

no proper foundation was laid for the particular questions at issue. Moreover, the informant's credibility was roundly attacked in other portions of cross-examination, which elicited both the existence of a cooperation agreement and the informant's prior criminal record. The additional examination that was denied could have elicited no more than a feather's weight on top of what was before the jury about his credibility. There was no error.

Finally, Weems appeals from restrictions on his cross-examination of Troiano about the failure to get a search warrant and about controlled weapons buys. Our disposition of the suppression issue renders these lines of questioning immaterial.

E. Jury Instructions

The jury was instructed that the government had to show that the gun had "previously traveled in interstate commerce or it previously [had] been transported across State lines, even though it wasn't in the Defendant's possession at the time." The court also instructed that the government did not have to show that defendant transported the gun across state lines. Weems belatedly requested an instruction that the jury had to find that Weems himself caused the gun to be transported across state lines.

Putting aside the issue of possible waiver, we reject the argument. The proposed instruction was an incorrect statement of the law. The instruction given followed Scarborough v. United States, 431 U.S. 563, 575 (1977). We do not view the Supreme

-14-

Court's decision in Jones, 529 U.S. at 848, as altering this precedent to require that the felon be the one who transported the firearm in interstate commerce. Nor do the other circuits which have addressed the question. See United States v. Lemons, 302 F.3d 769, 771-73 (7th Cir.), cert. denied, 123 S. Ct. 642 (2002); United States v. Singletary 268 F.3d 196, 199-205 (3d Cir. 2001), cert. denied, 535 U.S. 976 (2002); United States v. Santiago, 238 F.3d 213, 215-17 (2d Cir.), cert. denied, 532 U.S. 1046 (2001); United States v. Dorris, 236 F.3d 582, 584-86 (10th Cir. 2000), cert. denied, 532 U.S. 986 (2001).

Weems raises other objections to the jury instructions on appeal, but concedes that he failed to preserve them before the district court. The standard of review is therefore plain error, United States v. Crochiere, 129 F.3d 233, 237 (1st Cir. 1997), and his arguments are without merit.

F.  Sentence

Playing off Apprendi v. New Jersey, 530 U.S. 466 (2000), Weems makes two arguments to challenge his sentence, one of which we have already rejected and the other of which we reject now.

In United States v. Moore, 286 F.3d 47, 50-51 (1st Cir.), cert. denied, 123 S. Ct 242 (2002), we rejected the argument that the government must prove beyond a reasonable doubt at trial the predicate convictions underlying an ACCA sentence.

We now reject the argument that the phrase "not less than fifteen years" in the ACCA is a statutory maximum as well as a minimum. <u>See</u> 18 U.S.C. § 924(e)(1). As the district court correctly stated, the "not less than" language does not establish a statutory maximum. In fact, the maximum is life imprisonment and Weems was sentenced below that, so no <u>Apprendi</u> problem is raised. <u>See</u> <u>United States</u> v. <u>Mack</u>, 229 F.3d 226, 229 n.4 (3d Cir. 2000), <u>cert. denied</u>, 532 U.S. 1045 (2001).

G. <u>Conclusion</u>

The conviction and sentence are **<u>affirmed</u>**.