NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. NV-11-1681-KiPaD |
| BOBBY JOE WALLACE, FDBA B & M Well Drillers, Inc., and BRIDGET JANINE WALLACE, | Bk. No. 10-24125-LBR |
| Debtors. | |
| ABEL ROSALES; ROBERT PIKE; GARY AARDEMA; AARDEMA & LONDON, | |
| Appellants, | |
| v. | **M E M O R A N D U M**[1] |
| BOBBY JOE WALLACE; BRIDGET JANINE WALLACE, | |
| Appellees. | |

Argued and Submitted on June 15, 2012,
at Las Vegas, Nevada

Filed - June 26, 2012

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Linda B. Riegle, Bankruptcy Judge, Presiding

Appearances:    David Mincin, Esq. of McKnight & Hendrix, P.C.
argued for appellants, Abel Rosales, Robert Pike,
Gary Aardema, and Aardema & London; Christopher
Burke, Esq. argued for appellees, Bobby Joe Wallace
and Bridget Janine Wallace.

Before: KIRSCHER, PAPPAS, and DUNN, Bankruptcy Judges.

---

[1]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Appellants, Abel Rosales ("Rosales"), Robert Pike ("Pike"), Gary Aardema ("Aardema"), and Aardema & London (collectively "Appellants"), appeal an order from the bankruptcy court finding them in contempt for violating the discharge injunction and awarding debtors Bobby J. Wallace ("Wallace") and Bridget J. Wallace (collectively "Debtors") $260.00 for the fee to reopen their chapter 7[2] bankruptcy case, $1,400.00 for their attorney's fees, and $3,000.00 for punitive damages.  We AFFIRM the award for the reopening fee and attorney's fees.  However, because the bankruptcy court did not articulate sufficient findings to support the punitive damages award, we VACATE and REMAND that portion of the order to the bankruptcy court to make the required findings under Rule 7052.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Prior to filing for bankruptcy in Nevada in 2010, Wallace was a licensed contractor in the state of California.  In 2009, Rosales and Pike each entered into a contract with Wallace and his company, BJ's Drilling & Pump Service, to drill and install a well at their respective properties in California.  Rosales and Pike claimed they were damaged by Wallace's negligence in installing the wells.  Aardema is California counsel for Rosales and Pike.  Rosales' and Pike's claims against Wallace's surety bond were denied.  Appellants were in the process of preparing civil litigation against Wallace, his business, and the bonding company when they received notice of Debtors' bankruptcy.

---

[2]  Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

Debtors filed a chapter 7 bankruptcy case on July 29, 2010. They listed Appellants as unsecured creditors in their Schedule F. Debtors received their discharge on November 2, 2010. Appellants do not dispute receiving notice of Debtors' discharge.

On November 3, 2010, the day after entry of the discharge order, Rosales and Pike moved for relief from stay in Debtors' case to pursue an action in state court against Wallace and his business (the "Stay Relief Motion"). Aardema stated in his attached declaration that Wallace held a commercial general liability insurance policy ("CGL policy") with Colorado Casualty, which was in effect at the time he performed the work for Rosales and Pike. Aardema asserted that Colorado Casualty would provide Wallace a defense and indemnify him if his clients' damages resulted from a covered act under the policy. Aardema further stated that Wallace's surety bond with Travelers Casualty & Surety Co. of America ("Travelers") might also be a source for proceeds to compensate his clients. Therefore, although the Stay Relief Motion sought relief to pursue the state court action against Wallace and his business, any recovery was to be limited to the proceeds of Wallace's CGL policy and/or surety bond. Debtors did not oppose the Stay Relief Motion.

After a hearing, the bankruptcy court entered an order granting the Stay Relief Motion (the "Stay Relief Order") on January 4, 2011:

> IT IS HEREBY ORDERED that the automatic stay is lifted so that Abel Rosales and Robert Pike may pursue litigation in the Superior Court of California against the Debtor herein, with recovery limited to the extent of an insurance policy with Colorado Casualty and a contractor's bond issued by Travelers Casualty & Surety Co. of America.

-3-

Debtors' chapter 7 case was closed on January 20, 2011.

On April 15, 2011, three months after obtaining the Stay Relief Order, Appellants filed their action against defendants Wallace, BJ's Drilling & Pump Service, and Travelers in the California state court for negligence, breach of contract, breach of the covenant of good faith and fair dealing, and for payment on the Travelers bond (the "Complaint"). The Complaint did not refer to Colorado Casualty or any CGL policy. Moreover, the prayer for relief states, in part:

> WHEREFORE, plaintiffs pray as follows against all defendants:
>
> 1. For an award of general damages in an amount to be proven at the time of trial;
> 2. For an award of special damages in an amount to be proven at the time of trial:
> 3. For punitive and exemplary damages [.]

Wallace received the Complaint by mail on or about September 10, 2011.

On September 30, 2011, Debtors filed a motion to reopen their chapter 7 case and to find Appellants in contempt for violating the discharge injunction under § 105 (the "Contempt Motion"). Debtors contended that despite Aardema's representations in the Stay Relief Motion to the contrary and the limiting language in the Stay Relief Order, the Complaint wrongfully sought damages against "all defendants," including Wallace personally.[3] Debtors requested an order reopening their case to proceed with the Contempt Motion and awarding sanctions of $260.00 for the

---

[3] Debtors also contended that the Stay Relief Motion was unnecessary because they had already received their discharge, and thus no stay existed. See § 362(c)(2)(C).

-4-

reopening fee, $1,000.00 for attorney's fees, actual damages (to be determined), and $5,000.00 for punitive damages.

Appearing through Nevada counsel, Appellants filed an opposition to the Contempt Motion on October 20, 2011, contending the Complaint complied with the Stay Relief Order and that an action naming Wallace solely to establish his liability to collect on an insurance policy was not barred by the Code. Appellants reiterated that it was not their intent to pursue Wallace individually and contended that offers to Debtors' counsel to stipulate that any recovery be limited to insurance and/or bond proceeds had been unsuccessful.

In his declaration in support of the opposition, Aardema stated that the Complaint had been prepared long before Debtors filed their bankruptcy case, and that it was inadvertently not amended after obtaining the Stay Relief Order to reflect that recovery would be limited to the insurance proceeds only. Attached to Aardema's declaration were several documents reflecting his discussions with Debtors' counsel about the Contempt Motion. In a letter to Debtors' counsel dated October 10, 2011, Aardema stated that Wallace was named in the Complaint only because California law prohibits suits against insurance companies directly. Aardema advised Debtors' counsel that he was willing to stipulate that his clients were pursuing only the insurance policy if Debtors would withdraw the Contempt Motion. In a fax dated October 13, 2011, Debtors' counsel told Aardema that he was willing to withdraw the Contempt Motion if: (1) Debtors were reimbursed the $260.00 fee to reopen their bankruptcy case; and (2) counsel was reimbursed $500.00 for his

-5-

attorney's fees incurred to date. In other words, the matter could have been settled for $760.00. Aardema found the proposal unacceptable and proceeded to file the opposition.

In their reply, Debtors contended that Appellants' subjective intent not to pursue Wallace personally for a discharged prepetition debt was irrelevant; their affirmative act of seeking judgment against Wallace personally for general, special, and punitive damages was the issue and what violated the discharge injunction. Debtors further argued that Appellants could not rely on the Stay Relief Motion for their actions because it was filed after the discharge had been entered.[4]

The bankruptcy court held a hearing on the Contempt Motion on November 3, 2011. To explain why punitive damages were requested in the Complaint, Appellants said the Complaint language was "boilerplate," but that they were happy to file an amended complaint. Hr'g Tr. (Nov. 3, 2011) 3:18-4:1. While the court acknowledged that Wallace had to be named in the Complaint to trigger coverage by his insurer, it was concerned about why the Complaint failed to specify that Rosales and Pike were seeking damages against the insurance policy only. Id. at 4:22-5:5. Appellants had no answer other than that Aardema had subsequently

---

[4] Debtors filed a supplemental reply on November 1, 2011, contending that on October 29, 2011, Wallace was again served with a summons and the exact same complaint filed by Appellants seeking to hold him personally liable. Although Wallace asserted that this complaint was identical to the one previously served on him on September 10, Debtors attached only a copy of the summons. At the hearing on the Contempt Motion, Appellants' counsel explained that the Complaint was personally served on Wallace the second time only because Wallace refused to sign for it the first time when Appellants had attempted to serve him by mail. Hr'g Tr. (Nov. 3, 2011) 5:11-24.

-6-

offered to stipulate that fact with Debtors' counsel. Id. at 5:6-10.

The bankruptcy court disagreed with Appellants' assertion that the Complaint was not an act to collect on a discharged debt:

> I mean the way the complaint is written it sure is. How do we know tomorrow that [Aardema is] not going to default against the Debtor, and more importantly, the State court if there's no answer will probably enter judgment.

Id. at 6:9-12. When asked again why punitive damages were requested in the Complaint, Appellants responded that, as Aardema had explained in his declaration, it was a "boilerplate complaint" prepared before the bankruptcy, to which the court replied:

> What excuse is there for boilerplate complaints? I mean, that is one of the lamest excuses I've heard, that I shouldn't be liable because it's a boilerplate complaint.

Id. at 6:20-7:5. Appellants argued that even if the Stay Relief Motion was procedurally incorrect, per In re Munoz and the Stay Relief Order, they were free to pursue Wallace's insurance proceeds. According to Appellants, they had not willfully violated the discharge injunction, Debtors had not suffered any damages, and therefore sanctions were not warranted.

After hearing further argument from the parties, the bankruptcy court granted the Contempt Motion and announced its findings from the bench:

> I find it's a violation of the discharge injunction, and I'll explain as to exactly what it is a violation of, what's not, but I'm going to award sanctions of attorney's fees of Mr. Burke for filing the motion, appearing today and all work necessary to prepare the orders, plus the reopening fee. Plus I'm going to allow $3,000 in punitive damages.
>
> Now, it is not a violation of the contempt [sic] injunction or -- I don't have a problem with the fact that you did the lift of stay after the discharge was

-7-

entered. That to me is irrelevant to today's discussion. I also don't find a problem if you merely name the defendant under the status of the law.

But what is a problem is the boilerplate nature: We sue the defendant. We don't say in the complaint, when you obviously knew it was necessary, that you were not suing the defendant in his individual capacity, but only to recover damages against the insurance company on account of his acts.

And then on top of that to seek punitive damages is an absolute violation of stay [sic]. Of course it's intentional. You obviously knew you could only go against the insurance company because you filed the motion. And even if you don't know, there's no excuse.

The attorney -- I mean, the idea that it's boilerplate, . . . that's just ridiculous. The attorney's not doing his job.

. . . .

Under <u>Sternberg</u>, because they have yet to amend the complaint, Mr. Burke is entitled to fees not just for filing the motion to stop it, but it's still continuing. So that's going -- he's entitled to fees all the way through this process because they still haven't fixed it.

<u>Id.</u> at 10:17-12:12.

On November 17, 2011, the bankruptcy court entered an order granting the Contempt Motion and awarding Debtors $260.00 for the reopening fee, $1,400.00 for their attorney's fees, and $3,000.00 for punitive damages (the "Contempt Order"). Appellants timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 157(b)(2)(O) and 1334. We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court err when it determined that Appellants willfully violated the discharge injunction?

-8-

2.   Did the bankruptcy court abuse its discretion in awarding Debtors sanctions?

**IV. STANDARDS OF REVIEW**

The bankruptcy court's finding of a willful violation of § 524 is reviewed for clear error. Sciarrino v. Mendoza, 201 B.R. 541, 543 (E.D. Cal. 1996)(citing McHenry v. Key Bank (In re McHenry), 179 B.R. 165, 167 (9th Cir. BAP 1995)(reviewing a willful violation of the automatic stay). A finding is clearly erroneous when it is illogical, implausible, or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en banc).

An award or denial of sanctions under § 105(a) is reviewed for abuse of discretion. Nash v. Clark County Dist. Attorney's Office (In re Nash), 464 B.R. 874, 878 (9th Cir. BAP 2012)(citing Missoula Fed. Credit Union v. Reinertson (In re Reinertson), 241 B.R. 451, 454 (9th Cir. BAP 1999)). We review for clear error the trial court's factual findings in support of a punitive damages award. Bergen v. F/V St. Patrick, 816 F.2d 1345, 1347 (9th Cir. 1987).

In applying the abuse of discretion standard, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." Hinkson, 585 F.3d at 1262. If the correct legal rule was applied, we then consider whether its "application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. Only in the event that one of these three apply are we then able to find that the bankruptcy court abused its discretion. Id.

-9-

We may affirm on any ground supported by the record.  <u>Dittman v. Cal.</u>, 191 F.3d 1020, 1027 (9th Cir. 1999).

## V. DISCUSSION

**A.    Contempt under § 105.**

In a chapter 7 case, with exceptions not relevant here, "[t]he [bankruptcy] court shall grant the debtor a discharge." § 727(a).  When entered, that order "discharges the debtor from all debts that arose before the date of the [bankruptcy filing]." § 727(b).  To give the discharge teeth, § 524(a)(2) prescribes that a discharge "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]"

Unlike § 362, no specific provision exists in the Code to provide redress for violations of the discharge injunction. Nonetheless, an alleged violation of the discharge injunction can be pursued, as in this case, by a motion invoking the contempt remedies allowed for in § 105(a).  <u>In re Nash</u>, 464 B.R. at 879-80 (party that knowingly violates the discharge injunction can be held in contempt under § 105(a))(citing <u>Walls v. Wells Fargo Bank, N.A.</u>, 276 F.3d 502, 507 (9th Cir. 2002) and <u>Renwick v. Bennett (In re Bennett)</u>, 298 F.3d 1059, 1069 (9th Cir. 2002)).

To be subject to sanctions for violating the discharge injunction, a party's violation must be "willful."  The Ninth Circuit applies a two-part test to determine whether the willfulness standard has been met: (1) did the alleged offending party know that the discharge injunction applied; (2) and did such party intend the actions that violated the discharge injunction?

-10-

*In re Nash*, 464 B.R. at 880 (citing *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1205 n.7 (9th Cir. 2008), *aff'd*, 130 S. Ct. 1367 (2010)); *Zilog, Inc. v. Corning (In re Zilog, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2006). For the second prong, the bankruptcy court's focus is not on the offending party's subjective beliefs or intent, but on whether the party's conduct in fact complied with the order at issue. *Bassett v. Am. Gen. Fin. (In re Bassett)*, 255 B.R. 747, 758 (9th Cir. BAP 2000), *rev'd on other grounds*, 285 F.3d 882 (9th Cir. 2002). "A party's negligence or absence of intent to violate the discharge order is not a defense against a motion for contempt." *Jarvar v. Title Cash of Mont., Inc. (In re Jarvar)*, 422 B.R. 242, 250 (Bankr. D. Mont. 2009)(citing *Atkins v. Martinez (In re Atkins)*, 176 B.R. 998, 1009-10 (Bankr. D. Minn. 1994)); *see also In re Sanburg Fin. Corp.*, 446 B.R. 793, 804 (S.D. Tex. 2011)(that the offending party may have not understood its actions to violate the discharge injunction does not negate the willfulness finding, even if true).

The moving party must prove by clear and convincing evidence that the offending party violated the order. *In re Zilog, Inc.*, 450 F.3d at 1007; *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003). The moving party also has this same burden to prove that sanctions are justified. *Espinosa*, 553 F.3d at 1205 n.7. The burden then shifts to the offending party to demonstrate why it was unable to comply. *In re Bennett*, 298 F.3d at 1069. If a bankruptcy court finds that a party has willfully violated the discharge injunction, it may award actual damages, punitive damages and attorney's fees to the debtor. *In re Nash*, 464 B.R. at 880 (citing *Espinosa*, 553 F.3d at 1205 n.7 (citing

-11-

2 COLLIER BANKRUPTCY MANUAL ¶ 524.02[2][c] (3d rev. ed.))). The bankruptcy court has broad discretion in fashioning a remedy for violation of the discharge injunction. In re Bassett, 255 B.R. at 758.

**B. The bankruptcy court did not clearly err when it found that Appellants willfully violated the discharge injunction.**

Appellants did not deny knowing about the discharge injunction when they filed the Complaint. It is undisputed they were served with the discharge order. At minimum, Appellants knew something was in place, whether it be the automatic stay or the discharge injunction, that precluded them from pursuing Wallace personally for the debt. With this in mind, we turn now to Appellants' arguments on appeal.

First, Appellants assign error to the bankruptcy court for ruling that the discharge injunction applied to the Complaint because actions intended only to recover against a debtor's insurance proceeds are permissible. Despite Appellants' belief, the bankruptcy court never disputed the propriety of pursuing an action against Wallace in order to collect on his CGL policy, and it never ruled to the contrary. What the court took issue with is that insurance proceeds are not what Appellants sought in their Complaint.

The discharge injunction does not inhibit a creditor from collection efforts against non-debtor entities. § 524(e).[5] We

---

[5] Section 524(e) provides:

Except as provided in subsection (a)(3) of this section [which is not relevant here], discharge of a debt of the
(continued...)

-12-

have held that a post-discharge action against a debtor solely in order to collect on an insurance policy is permissible, so long as the creditor does not intend to enforce any judgment against the debtor or debtor's property. Ruvacalba v. Munoz (In re Munoz), 287 B.R. 546, 550 (9th Cir. BAP 2002)("Where the purpose of an action is to collect from a collateral source, such as insurance, . . . and the plaintiff makes it clear that it is not naming the debtor as a party for anything other than formal reasons, no bankruptcy court order is necessary.")(citing Patronite v. Beeney (In re Beeney), 142 B.R. 360, 363 (9th Cir. BAP 1992)(allowing plaintiff's suit against debtor to collect on an insurance policy merely leaves debtor in the position of a witness who would appear at trial). It must be clear that recovery will be limited to insurance proceeds. In re Munoz, 287 B.R. at 550 n.2.

The bankruptcy court agreed that naming Wallace in the Complaint was necessary in order to trigger coverage under his CGL policy and/or surety bond, and it entered the Stay Relief Order allowing Appellants to proceed with the state court action naming Wallace for that purpose. However, Appellants crossed the line when they filed a complaint that failed to mention the CGL policy or make clear that they were pursuing only the proceeds.[6] Despite

---

[5](...continued)
debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

[6] Appellants asserted they were prohibited by California law from directly suing the insurer, Colorado Casualty. However, they have never asserted anything to the effect that they were prohibited by law from mentioning the existence of an insurance policy in the Complaint. In fact, they expressly named Travelers and the surety bond.

-13-

Appellants' assertions in the Stay Relief Motion and the directive in the Stay Relief Order that recovery would be limited to the proceeds of Wallace's CGL policy and/or surety bond, the Complaint failed even to mention the CGL policy. The Complaint went one step farther and expressly sought damages, including punitive damages, against all defendants, which necessarily included Wallace. Therefore, the Complaint was far from clear that recovery would be limited only to Wallace's insurance proceeds.

Appellants contend they had no intention of proceeding against Wallace personally. We reject this argument for two reasons. First, the Complaint reflects an intent to sue Wallace personally. Further, a prayer for punitive damages show an intent to collect against Wallace only, especially since such damages would not be covered under his CGL policy or surety bond. Second, what Appellants "intended" is not the test for whether they violated the discharge injunction; the question is whether their conduct complied with the court's order. In re Bassett, 255 B.R. at 758.

Clearly, Appellants' conduct did not comply and, despite their assertion to the contrary, the Stay Relief Order did not provide them a good faith basis to disregard the discharge injunction and sue Wallace personally.[7] Aardema even admitted that the "boilerplate" Complaint had been drafted long before Debtors' bankruptcy, and that it was inadvertently not amended to

---

[7] Like the bankruptcy court, we are not concerned that Appellants erroneously sought relief from stay and obtained the Stay Relief Order even though Debtors had already received a discharge and no stay existed. See § 362(c)(2)(C). It has no bearing on whether they violated the discharge injunction, and it has no bearing on the outcome of this appeal.

-14-

reflect that recovery would be limited to the insurance proceeds only.[8]  Thus, Appellants knew the Complaint, as written, violated the discharge injunction.  Their attempt to "cure" the violation after the fact by stipulating that they were not proceeding against Wallace personally was too little too late.  Even if their conduct could be considered negligent at the time, negligence is no defense to a motion for contempt.  In re Jarvar, 422 B.R. at 250; In re Atkins, 176 B.R. at 1009-10; In re Sanburg Fin. Corp., 446 B.R. at 804.  Besides, after being informed by Debtors' counsel that the Complaint violated the injunction, Appellants had still not amended it by the time of the hearing on the Contempt Motion in November 2011, which was nearly seven months after the Complaint had been filed.

We conclude that Appellants' conduct was willful and a continuing violation of the discharge injunction.  Therefore, we see no clear error by the bankruptcy court.

**C.  The bankruptcy court did not abuse its discretion in awarding Debtors the reopening fee and the attorney's fees for Appellants' contempt, but it erred by not making sufficient findings to support the award for punitive damages.**

Appellants next argue that the bankruptcy court erred by awarding Debtors sanctions.  Specifically, Appellants contend that § 524(a)(2) does not provide for an award of attorney's fees and costs and, in any event, such an award is contrary to Sternberg v. Johnston, 595 F.3d 937 (9th Cir. 2009).  They further argue that punitive damages were not warranted because nothing in the record

_____

[8]  We further note that the Stay Relief Order was entered on January 4, 2011, and the Complaint was filed on April 15, 2011. Appellants therefore had over three months to amend the Complaint before filing it, yet they failed to do so.

-15-

suggests they willfully violated the discharge injunction. We have already concluded that Appellants willfully violated the discharge injunction. Once the bankruptcy court made that finding, it was well within its discretion to award sanctions. The question is whether the sanctions were appropriate.

We, as well as the Ninth Circuit, have held that if a bankruptcy court finds that a party has willfully violated the discharge injunction it may award actual damages and attorney's fees to the debtor. Espinosa, 553 F.3d at 1205 n.7; In re Dyer, 322 F.3d at 1195 (attorney's fees are an appropriate component of a civil contempt award); In re Nash, 464 B.R. at 880. Sternberg has not changed that rule.

In Sternberg, the Ninth Circuit held that a debtor may recover attorney's fees under § 362(k)[9] to the extent they are an element of the debtor's "actual damages." 595 F.3d at 947. Therefore, attorney's fees may be recovered for work associated with bringing about an end to the stay violation but not for fees the debtor incurred in prosecuting an adversary proceeding for damages. Id. at 948. Notably, Sternberg is a stay violation case under § 362(k), not a proceeding for civil contempt of the discharge injunction under § 105. Contrary to Appellants' assertion, Sternberg expressly limited its holding to the application of § 362(k); it does not preclude a debtor from seeking attorney's fees in a civil contempt enforcement proceeding under § 105. Id. at 946 n.3. Arguably, even if Sternberg did

---

[9] Section 362(k) provides that an individual injured by any willful violation of a stay shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

-16-

apply, the fees awarded to Debtors were only those fees associated with bringing about an end to Appellants' violation of the discharge injunction, which was still continuing up until the hearing on the Contempt Motion. Why the bankruptcy court applied Sternberg is unclear, although it may have applied Sternberg by analogy, and it erred in doing so. However, such error was harmless because once the court found that Appellants had willfully violated the discharge injunction, it was authorized to consider an award for actual damages and attorney's fees. In re Nash, 464 B.R. at 880; Espinosa, 553 F.3d at 1205 n.7.

Because the Contempt Motion was a contested matter subject to Rule 9014, the bankruptcy court was required to make sufficient findings to support the sanctions award under Rule 7052(a). See Rule 9014(c). As for the reopening fee and attorney's fees, we conclude the bankruptcy court complied with Rule 7052(a) and did not abuse its discretion in awarding those compensatory damages. However, because the court did not make sufficient findings to support the award for punitive damages, we must vacate and remand that portion of the Contempt Order.

Although we have held that punitive damages are available in cases of discharge injunction violations, § 105 is a civil contempt authority and, as such, it authorizes only civil sanctions as an available remedy. In re Dyer, 322 F.3d at 1192. Bankruptcy courts also are authorized under inherent authority to sanction a broader range of conduct, such as improper litigation tactics, but the court must make an explicit finding of bad faith or willful misconduct to support it --- i.e., something more egregious than mere negligence or recklessness. Id. at 1196.

-17-

Bankruptcy courts are not authorized to impose criminal sanctions. Id. at 1193.

Dyer recognized that civil penalties must be either compensatory or designed to coerce compliance. Id. at 1192. Thus, "'a flat unconditional fine totaling even as little as $50' could be [a] criminal [sanction] 'if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance,' and the fine is not compensatory." Id. (quoting F. J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1137-38 (9th Cir. 2001). However, "'relatively mild' noncompensatory fines" may be necessary under some circumstances. In re Dyer, 322 F.3d at 1193 (citing Zambrano v. Tustin, 885 F.2d 1473, 1479 (9th Cir. 1989)). Nonetheless, such punitive sanctions cannot be "serious." Id. The Dyer court left open the question of what is a "serious" punitive sanction, but implied that any fine above $5,000.00 (presumably in 1989 dollars) would be considered "serious." Id. (citing Hanshaw, 244 F.3d at 1140 n.10).

Thus, whether the $3,000.00 punitive damages awarded in this case is considered a coercive civil sanction or a "relatively mild" noncompensatory sanction, the bankruptcy court needed to make sufficient findings to support it. In re Dyer, 322 F.3d at 1192-98.

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM the bankruptcy court's award to Debtors for the $260.00 reopening fee and the $1,400.00 for attorney's fees. However, because the bankruptcy court did not make sufficient findings to support the $3,000.00 award for

-18-

punitive damages, we VACATE and REMAND that portion of the Contempt Order so the bankruptcy court can conduct proceedings consistent with this decision.